[Civ. No. 24420. Second Dist., Div. Two. June 22, 1960.]

EDWARD J. MANG, Appellant, v. COUNTY OF SANTA BARBARA et al., Respondents.

94

Francis B. Cobb for Appellant.

Vern B. Thomas, District Attorney, Robert D. Curiel, James T. Barnes and Dana D. Smith, Deputy District Attorneys, for Respondents.

KINCAID, J. pro tem.*—This is an appeal by a landowner from a judgment of the Superior Court for Santa Barbara County denying his petition for a writ of mandate. Appellant sought mandate in the court below to compel the respondents, county of Santa Barbara, its board of supervisors and its county building department, to issue him a building permit for construction of a trailer park and gasoline service station on part of his land.

Appellant is the owner of an 800-acre ranch situated on Highway Number 1 some 35 miles north of Santa Barbara. Said land was used for grazing purposes; and, prior to August 4, 1958, it was unzoned.

On July 8, 1958, appellant called at the Santa Barbara County Building Department and inquired about requirements for a building permit to establish a trailer park on his property. He was told in essence that there was no zoning applicable to his property; but that he would have to obtain permits as required by ordinance Number 942 of the county of Santa Barbara regulating the design and construction of trailer parks.

Immediately thereafter without obtaining any permit, appellant proceeded to have certain work done.[1] The said work consisted of grading and leveling a site for the proposed trailer park; excavations for a septic tank and for a swimming pool; the drilling of a water well; and the erection of a water storage tank. Appellant expended in excess of $3,400 for the costs of said work.

Thereafter on or about August 8, 1958, appellant for the first time made application for a permit to establish and construct a trailer park on his property.

Appellant was thereupon informed that the board of su-

---

[1]As later discussed, appellant contends that said work was merely preparatory; and that no ordinance nor statute required permit to be secured for such preparatory work. Respondents contend that permits were required to be secured before undertaking such work; and that such work was, therefore, illegally commenced and performed in violation of ordinances and statutes requiring permits to be first secured before commencing and performing such work.

*Assigned by Chairman of Judicial Council.

pervisors on August 4, 1958, had enacted temporary interim zoning ordinance Number 959, which ordinance prohibited the issuance of building permits for trailer parks and gasoline service stations on 27,000 acres of land including applicant's land. Said ordinance in essence temporarily zoned 27,000 acres of land, adjacent to and including appellant's land, as agricultural; and it prohibited the use of such lands for commercial trailer parks and gasoline service stations.[2]

Subsequently on or about November 17, 1958, the board of supervisors enacted permanent zoning ordinance Number 985, which permanently zoned said 27,000 acres, including appellant's acreage, as agricultural and prohibited the use of such lands for commercial trailer parks and gasoline service stations.[3]

It further appears that, following the enactment of said ordinance Number 959, appellant applied to the county planning commission for a permanent zoning of 40 acres of his land, or for an exception as to said 40 acres, to permit use thereof as trailer park and for gasoline service station; and that appellant's said petition was denied by said commission and by the board of supervisors.

After denial thereof and of his said application for a building permit, appellant filed his petition for writ of mandate to have said ordinance Number 959 declared invalid and to compel the respondents to issue permit authorizing the construction of trailer park and gasoline service station on his property. As previously stated, judgment denying said petition was rendered by the lower court, and this appeal is taken therefrom.

The essence of appellant's contentions is: (a) that said zoning ordinances Numbers 959 and 985 were invalidly enacted; and (b) that, in any event, they were not applicable to appellant by reason of his asserted preexisting nonconforming use before their enactment. Appellant also contends that the county's alleged policy in zoning very large areas

[2]Appellant contends that the evidence shows that his application for a permit to construct the trailer park was denied solely on the ground that said ordinance Number 959 had been enacted and made immediately effective on August 4, 1958. Respondents contend that appellant was also informed that his plot plans did not comply with requirements of various ordinances, and that there is no evidence that said plans were ever revised to conform thereto.

[3]As later discussed, appellant contends that the board of supervisors also allegedly added a provision to said ordinance Number 985 requiring a 50-foot setback from the center line of each street, and that the legal effect thereof was to invalidate the entire ordinance.

for one restricted use (e.g. for agricultural use only) and requiring landowners to make special applications for exceptions therefrom, is contrary to state law and planning, arbitrary and violative of constitutional rights.

It is first contended that said ordinance Number 959 was not in truth or fact a temporary interim zoning ordinance authorized under Government Code, section 65806; that it was an amendment to the county's existing basic zoning ordinance Number 661, and a general permanent zoning ordinance rather than an interim ordinance prohibiting interim uses as authorized under said section 65806; and that, therefore, said ordinance Number 959 could only validly be enacted and become effective after notice and hearing as provided in section 65804 of the Government Code, and other applicable sections of the Government and Elections Codes.

It is undisputed that ordinance Number 959 was enacted without the giving of notice or the holding of public hearing. The trial court held, however, that, while no notice was given nor public hearing held, the ordinance was valid as an urgency measure under the provisions of Government Code, section 65806.

Section 65806 of the Government Code provides in part: "If the planning commission . . . is conducting or intends to conduct studies within a reasonable time for the purpose of, . . . [recommending] to the legislative body the adoption of any zoning ordinance or amendment or addition thereto, . . . the legislative body to protect the public safety, health and welfare, may adopt, *as an urgency measure*, a temporary interim zoning ordinance prohibiting such and any other uses which may be in conflict with such zoning ordinance." (Emphasis added.)[4]

■■ Appellant contends that ordinance Number 959 does not comply with section 65806 for the reasons that said ordinance was not an interim or temporary measure since it contained no limitation on its term of existence; that there is no showing of any urgency that affects public safety, health or welfare; that it is not limited to prohibiting uses; that it affects an amendment to the county's basic zoning ordinance

---

[4]Government Code, section 65804, provides: "Except as otherwise provided in this article, an amendment to a zoning ordinance which amendment changes any property from one zone to another or imposes any regulation listed in Section 65800 not theretofore imposed . . . shall be initiated and adopted in the same manner as required for the initiation and adoption of the original zoning ordinance."

Number 661 and proceeds to rezone and classify 27,000 acres on a permanent basis.

An examination of the provisions of said ordinance Number 959 is alone sufficient to show that appellant's said contentions are not well founded.

The ordinance is entitled, ''An Ordinance Adopting Interim Zoning Regulations . . .''; and section 5 thereof states, ''It is hereby declared that this ordinance is necessary for, and is required for the immediate preservation of the public safety, health and welfare . . .''

It also contains a declaration of facts constituting the urgency, as follows: ''The Planning Commission . . . in good faith is conducting studies for the purpose of holding hearings precedent to the adoption by the Board of Supervisors of zoning regulations in sections of the County where development is occurring as a result of the influx of population. Establishment of two missile bases in the Lompoc area will result in types of development in San Julian Valley [i.e. the valley where appellant's property is situated] which may be inimical to the public peace, health, safety and general welfare and to the orderly growth of the Valley. It is therefore necessary that this ordinance take effect immediately to prevent, pending adoption of precise zoning regulations, establishment of land uses which will destroy the effect and purpose of a comprehensive zoning plan.''

In other sections of said ordinance Number 959, it is ordered that the subject land be interim zoned, and uses permitted, for agricultural and certain other purposes, not including use for commercial trailer parks, motels or hotels, or retail sales of petroleum products. The only reference to the county basic zoning ordinance Number 661 was that said ordinance ''is hereby incorporated and made a part of this ordinance by reference . . .''

The truth of the recitals of the legislative body (i.e. the board of supervisors) that the adoption of such interim zoning ordinance was necessary in order to protect public safety, health and welfare and that the county planning commission was conducting or intended to conduct studies within a reasonable time for the purpose of recommending the adoption of a permanent zoning ordinance, must be assumed, and the ordinance must be deemed to be presumptively valid. (*City of Los Angeles* v. *Gage,* 127 Cal.App.2d 442, 450-452 [274 P.2d 34].) Also the record shows that such studies were made and that a permanent zoning ordinance was in fact adopted within a reasonable time.

■ The contention that the ordinance was not an interim or temporary measure because it contained no express limitation on its term of existence, is without merit. The ordinance was obviously intended to be limited in duration and to expire upon the adoption of the permanent ordinance as to which studies were in progress. Nothing in section 65806 requires the fixing of a precise time limit; and, where the ordinance expressly recites that it is an interim zoning regulation pending adoption of precise zoning regulations, it cannot be reasonably held that the ordinance was permanent and therefore not one within the purview of section 65806.

■ The contention that ordinance Number 959 is not within the purview of section 65806 because it was allegedly not limited to prohibiting uses, is specious. The interim zoning ordinance necessarily had to zone the property; and, in permitting only certain limited uses, it thereby prohibited any other uses. Unless the ordinance spelled out every conceivable prohibited use, the only practicable and common sense way of expressing the prohibition was to say (as the ordinance does) that the property is zoned and to be used for agricultural and certain other limited purposes only pending the adoption of a permanent zoning ordinance.

■ Equally unfounded are appellant's contentions that ordinance Number 959 was an amendment of aforementioned ordinance Number 661, and that it rezoned the 27,000 acres in question on a permanent basis. Ordinance Number 959 nowhere provides or implies that it is an ordinance amending or purporting to amend said ordinance Number 661. It merely incorporates by reference the provisions of said ordinance Number 661, and it is clearly a separate and distinct ordinance standing on its own provisions and not purporting to be an amendment of ordinance Number 661. Further the recitals and provisions of ordinance Number 959 clearly show that it was not the intention to zone said 27,000 acres on a permanent basis but only during the interim period pending adoption of precise zoning regulations.

Since the provisions of ordinance Number 959 show that said ordinance was clearly one enacted under and in conformity with section 65806 of the Government Code, said ordinance was a temporary interim zoning ordinance which became effective by its terms and by law on August 4, 1958, before appellant's application for a building permit. Accordingly, appellant was without any legal right to have the permit issue to him for a use prohibited by said ordinance, and his

application for such a permit was properly denied by respondents.

In view of the provisions of ordinance Number 959 and said section 65806, it is unnecessary to review and discuss the several cases cited by appellant. Suffice it to say that none of said cases[5] relate to a situation involving an ordinance enacted pursuant to said section 65806; and that said cases concern situations where the ordinances in question were enacted under other sections of the Government Code requiring notice and hearing. (See generally as to emergency zoning ordinances: *Miller* v. *Board of Public Works,* 195 Cal. 477, 496 [234 P. 381, 38 A.L.R. 1479]; *Lima* v. *Woodruff,* 107 Cal.App. 285 [290 P. 480].)

 Appellant next contends that permanent ordinance Number 985 was also invalidly enacted. He bases this contention principally on claim that the board of supervisors proceeded to make an allegedly material change in said ordinance by adding thereto, without any recommendation from the planning commission or further public hearing, a section requiring a 50-foot setback from the center of any street.

Respondents assert, and the record supports them, that, at the conclusion of the public hearing relating to proposed ordinance Number 985, the desirability of an allegedly minor change to require a setback of buildings from roads was considered and referred to the planning commission for a report. It appears that thereafter the planning commission recommended that such setback provision be added to the proposed ordinance, and that the board of supervisors thereafter enacted the ordinance including the recommended setback provision.

It would first appear that, under Government Code, section 65655, providing in effect that changes can be made in proposed zoning regulation plans after referral of the proposed change to the planning commission and report thereon by such commission, the procedure followed was in accord with the law.

It would also appear that, under *Bailey* v. *County of Los Angeles, supra,* 46 Cal.2d 132, 138-139, no further public hearings need be held where the change is not something new

[5]*Johnston* v. *City of Claremont,* 49 Cal.2d 826 [323 P.2d 71]; *Johnston* v. *Board of Supervisors,* 31 Cal.2d 66 [187 P.2d 686]; *Bailey* v. *County of Los Angeles,* 46 Cal.2d 132 [293 P.2d 449]; *Munns* v. *Stenman,* 152 Cal.App.2d 543 [314 P.2d 67]; *McCombs* v. *Larson,* 176 Cal. App.2d 105 [1 Cal.Rptr. 140].

initiated by the legislative body, but merely a change in the ordinance as proposed by the planning commission.

In any event, if we should assume the provision relating to setback was illegally adopted, that circumstance would avail appellant nothing since the remaining controlling portions of ordinance Number 985 would remain valid. (See *City of La Mesa* v. *Tweed & Gambrell Planing Mill,* 146 Cal.App.2d 762, 771-772 [304 P.2d 803].)

Appellant further contends that Santa Barbara's alleged policy of zoning very large areas for agricultural uses only and requiring individual landowners to apply for exceptions, is a reversion to the old practice and abuse attending former policy of granting or denying zoning upon separate applications and that such a policy is contrary to state law and planning as set forth in sections 65460-65477 of the Government Code.

The reasons for and the necessity of the zoning made by ordinances Numbers 959 and 985 are clearly set forth in said ordinances; and nothing in the Government Code disempowered the Board of Supervisors of Santa Barbara County from attempting to meet the various serious problems arising as a result of population influx. The determination of said board that areas of grazing and farming land should be zoned for agricultural purposes is a matter clearly within the competence and province of the board of supervisors.

Finally, there is no substantial merit to appellant's contention that said ordinances, even if valid, were not applicable in his case by reason of his asserted preexisting nonconforming use before their enactment.

As previously alluded to, appellant's claimed preexisting nonconforming use prior to the enactment of such ordinances consisted solely in his actions in proceeding without obtaining any permit to excavate, drill well and erect storage tank, and in making considerable expenditure therefor.

Respondents contend in any event that appellant's said asserted prior nonconforming use was founded on appellant's illegal acts, i.e. construction performed in violation of ordinances and statutes. Appellant contends in substance that said work was merely preparatory, and that no ordinance nor statute required him to secure a building permit for such work.

Various ordinances and statutes are set forth in the briefs and the subject is extensively discussed. It appears, however, that the provisions of section 200 of ordinance Number

942 are sufficient to establish that a building permit was required before appellant was legally entitled to proceed with the work which he had done without permit. As also previously stated, appellant was told on July 8, 1958, that he would have to obtain permit as required by said ordinance. It also appears that appellant has been a building contractor since 1928.

Said section 200 of said ordinance provides in part: "No person shall establish, construct, or develop a trailer park . . . unless he shall have applied for and obtained a . . . permit to do so from the County Building Inspector."

The record herein shows more particularly that, before submitting application for and securing a permit, appellant proceeded to grade and level some five acres of his land, made excavations some 20 feet wide, 40 feet long and 10 feet deep for a swimming pool and some 9 feet wide, 20 feet long and 10 feet deep for a septic tank, and drilled a well some 135 feet deep.

To say that a permit was not required under said section 200 of said ordinance Number 942 for such extensive work and that such work was merely preparatory would be to emasculate the plain intent and requirements of said ordinance and open the gates to unregulated activities on part of contractors and landowners. It, therefore, is inescapable that appellant acted illegally in undertaking such extensive work without first obtaining permit therefor as required by ordinance Number 942.

The legal doctrine of preexisting nonconforming use is not applicable and cannot be invoked where the prior "nonconforming use," as herein, was founded on the owner's illegal acts, i.e. the result of the owner's actions in violating duly enacted ordinances. (*Wilkins* v. *City of San Bernardino,* 29 Cal.2d 332, 342 [175 P.2d 542]; *Price* v. *Schwafel,* 92 Cal.App.2d 77, 83-84 [206 P.2d 683].)

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.