[Civ. No. 20194. First Dist., Div. One. May 8, 1962.]

L. S. FLETCHER et al., Plaintiffs and Respondents, v. NOEL E. PORTER as City Councilman, etc., et al., Defendants and Appellants.

Robert E. Michalski, City Attorney, and Stanley R. Norton, Assistant City Attorney, for Defendants and Appellants.

Paul N. McCloskey, Jr., and Paul N. McCloskey, Sr., for Plaintiffs and Respondents.

TOBRINER, J.—This attempt of the City Council of Palo Alto to retain powers allegedly vested in it by the city charter, by preventing the electorate from voting on an ordinance proposed through the initiative procedure, must fail. The ordinance would clarify the duties of the planning commission with respect to the adoption of a master plan. We find no merit in the council's multiple objections to the ordinance: (1) that the ordinance, if valid, cannot be initiated by the electorate; (2) that the ordinance violates legislative requirements and due process of law; and (3) that the ordinance is void for vagueness.

The factual background of the proposed legislation does not appear to be in dispute. In excess of 3,000 persons, residents of the City of Palo Alto, signed an initiative petition which requested the city council to enact or submit the proposal to the electorate at a special election. The petition sought to amend the existing city ordinance, section 251.3 of the Administrative Code of the City of Palo Alto.

The city attorney advised the council that the ordinance was invalid. Pursuant to that opinion, the city clerk did not check the signatures on the petition; the council did not act on the initiative. Respondents, taxpayers, residents and electors of Palo Alto, thereupon filed a petition for a writ of mandate with the superior court asking the court to issue a writ of mandate commanding the city clerk to examine the signatures for sufficiency and ordering the city council either to enact the ordinance or submit it to the electorate at a special election. The alternative writ issued; appellants appeal from the order granting the peremptory writ of mandate.

We initially analyze the terms of the proposed ordinance, construing them if possible, as we must, so as not to conflict with other legislative enactments. (*City of Los Angeles* v. *Barrett* (1957) 153 Cal.App.2d 776, 782 [315 P.2d 503]; *Glass* v. *City of Fresno* (1936) 17 Cal.App.2d 555, 560 [62 P.2d 765].) An examination of the separate subdivisions discloses no conflict on their face or in the language with other provisions of the charter.

Subdivision (a) of the proposed ordinance reposes in the planning commission "the primary duty to prepare, adopt and recommend to the City Council" master plans; it deletes from the original enactment the provision that "[t]he Com-

mission shall be advisory only. . . ." While appellants would convey to the commission the power to bind the council to its plans, the contention cannot surmount the word "recommend." To recommend does not mean to bind. We may, therefore, read the proposal in consonance with the charter provision that "[a]ll . . . commissions . . . under the provisions of this charter . . . shall be advisory only and shall exercise no governmental or administrative powers." Moreover, in construing the ordinance we may note the arguments urged to support the initiative measure (*People* v. *Tilkin* (1939) 34 Cal.App.2d Supp. 743, 752 [90 P.2d 148] ; *City of Pasadena* v. *Railroad Com.* (1920) 183 Cal. 526, 530 [192 P. 25, 10 A.L.R. 1425] ) ; the advocates of the proposal state the purpose of the ordinance to be the " [c]larification of the duties of the Planning Commission," not the enlargement of the commission's powers, and certainly not the delegation of a right to adopt binding master plans.

Subdivision (b) of the proposal would incorporate articles 7 and 8, chapter 3 of title 7 of the Government Code, which promulgate a system for the preparation and adoption of master plans by general law cities. Such provisions do not apply to a charter city unless such a city adopts them by charter or ordinance. (Gov. Code, § 65304.) We note again that these sections grant to the planning commission only the power of recommendation, not of the adoption, of master plans. (Gov. Code, §§ 65500-65516.) These provisions are confined to empowering the commission to approve the master plan prior to submission to the legislative body ; the legislative body "may change or add to all or part of an adopted master plan. . . ." (Gov. Code, § 65511.)

Subdivisions (c), (d) and (e) likewise speak in the accents of recommendation : (c) provides that the planning commission shall annually review the general plan and recommend changes to the council ; (d) stipulates that the general plan "shall be the guide for the Capital Improvement Program" insofar as it "affects the physical development of the city." Subdivision (e) provides that all matters "affecting the physical development of the City shall be submitted to the Planning Commission for a report to the City Council as to conformity to the Master Plan" ; since the commission's function is recommendatory only, subdivision (e) carries no binding consequences.

With the exception of coverage within the 1955 interim general plan, subdivision (f) precludes zoning or rezoning for

industrial or manufacturing uses until the commission submits to the council its comprehensive general plan. The provision does not, as appellants contend, incorporate a zoning ordinance but constitutes an interim measure which protects the performance of the remaining provisions of the ordinance.

Finally, subdivision (g), which delegates to the commission "such other duties as may be prescribed by the ordinances of the City or resolutions and motions of the Council" does not conflict with article III, section 20, of the charter, which gives the council the power to assign additional duties to commissions.

We turn to a consideration of the specific arguments of appellants attacking the validity of the ordinance.

1. *The ordinance, if valid, may be initiated by the electorate.*

We examine appellants' attempt to defeat the use of the initiative upon the grounds that it may not be applied to this type of ordinance; that the electorate may not exercise powers "vested solely in the City Council"; that the initiative applies only to legislative, not administrative, acts, and that zoning ordinances are not subject to the initiative process.

First, while appellants strongly rely upon the proposition that *Alexander* v. *Mitchell* (1953) 119 Cal.App.2d 816 [260 P.2d 261], forbids the use of the initiative to abrogate a power delegated to the municipality by the Legislature, which affects matters of statewide concern, the ordinance here does not involve such a subject matter. *Alexander* held that the initiative could not be used to negate the municipality's power to determine whether or not to use eminent domain for off-street parking facilities. That decision of this division written by Justice Bray states: "While the initiative and referendum deal with the reserved powers of the people and should be liberally construed to uphold the power wherever that reasonably can be done (*Collins* v. *City & County of San Francisco*, 112 Cal.App.2d 719 [247 P.2d 362]), nevertheless the right of eminent domain is a matter of statewide concern and being such cannot be abrogated by the people of a municipality. A city has no inherent power of eminent domain. [Citations.] It exercises it only because authorized by the state Legislature." (P. 821.)

The proposed ordinance, however, does not involve, like *Alexander*, a "matter of statewide concern" but a local subject matter. (P. 821.) To the extent that the ordinance relates to the duties of the planning commission, certainly it

is local in nature. To the extent that it attempts to adopt by reference sections 65460-65516 of the Government Code relating to the procedure for adopting a master plan, it is local in nature; the adoption of a master plan effects no statewide consequences. To the extent that the ordinance would suspend the council's power relating to matters which affect the physical development of the city or the council's power to rezone property pending action by the planning commission, the ordinance would not invade statewide areas. To show that the subject matter of the *Alexander* case involved a municipal and not a statewide affair appellants apparently rely upon the statement in the opinion that "while off-street parking projects are matters of *citywide concern* in the same sense that anything done by a municipality is, essentially they are primarily of *local interest*. . . ." (Pp. 826-827; emphasis added.) The court there contrasts matters of citywide concern with those of a local interest in a "given area" in which the "property owners . . . desire to form an assessment district. . . ." (P. 827.) The court does not contrast *statewide* matters with local matters as we have used the terms *supra*.

Second, appellants contend that the ordinance would enable the electorate to exercise powers vested solely in the city council. Yet the cases to which appellants refer (*Alexander* v. *Mitchell, supra,* 119 Cal.App.2d 816; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558 [11 Cal.Rptr. 340]), involve situations in which the Legislature has specifically delegated certain powers of statewide concern to a governing municipal body.

*Alexander* does not support appellants' contention in this respect. This court held in that case that the electorate could not deprive the city council of the right of eminent domain, saying "Section 1241, Code of Civil Procedure, vests the power to make the determination of convenience and necessity in the members of 'the legislative body of a . . . city.' Those members could not do away with the power of eminent domain; neither can the people of a particular community." (P. 821.) The court, however, there dealt with a power of the city council directly granted by the Legislature. As we have pointed out *supra*, that power concerned a matter of statewide concern.

While appellants rely heavily upon the statement in *Alexander* that designation of the "legislative body" to perform certain acts cannot include action by the electorate, the designation which we applied in that case derived from the Consti-

tution and from statute. We ruled, in effect, that if the state gave certain powers to the "legislative body," the people could not exercise the delegated powers. We surely did not mean to say that in every case in which a charter gave the council the power to enact certain ordinances, or to pass ordinances generally, such ordinances would not be the proper subject of the initiative procedure. Appellants' attempted construction would all but abolish the initiative and referendum processes.

We discuss at this point, of course, the matter of the designation of the "legislative body" which is to perform the specified acts, and not, as appellants contend, the matter of the general power of amendment of charters by initiative procedures. We have analyzed *supra* appellants' reference to the language in *Alexander* stating that an initiative provision cannot properly conflict with the charter. We have explained that the proposal here does not *conflict* with the charter: it does not take away from the council the right to make final determinations as to the subject matter since the planning commission's function is recommendatory only. In *Alexander* the proposal sought to "take away from the council the right to make such determination. . . ." (P. 822.)

We believe the same criticism applies to appellants' citation of *Mervynne* v. *Acker, supra,* 189 Cal.App.2d 558, which states at page 564: "When the legislative body is specifically designated *in a statute* to perform an act, that designation is generally deemed exclusive unless the wording of the Act is reasonably susceptible of a contrary intention." (Emphasis added.) In a situation which involves a statewide rather than local interest, the state Legislature may indeed choose to grant a specific function to the council itself; the council then acts as an agent of the state. If, however, a charter provides that certain ordinances may be enacted by the council and that the electorate may enact "any ordinance" by initiative or referendum, the use of the term "legislative body" or "council" in the charter obviously does not prohibit the people from acting by initiative. (See also: *Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832 [313 P.2d 545], cited by appellants, which involved delegation by the Legislature of the power to impose a sales tax, a matter of statewide concern.)

Indeed, the Legislature could not properly interfere with a chartered city's regulation of purely local affairs. Even if the Legislature attempted to enact general laws on such a

subject, the City of Palo Alto, because it is a charter city, would not be bound by the legislation. For this reason the doctrine of *Hurst* v. *City of Burlingame* (1929) 207 Cal. 134, 141 [277 P. 308], that a zoning act, enacted by the Legislature, may control over the use of the initiative by residents of a city, does not apply here. Since Burlingame was not a charter city at that time, it was subject to general laws, even as to the regulation of municipal affairs.

██ Third, appellants state that only legislative and not administrative acts are subject to the initiative. The instant ordinance, however, is clearly legislative. A legislative enactment does not become "administrative" because it describes the manner by which a body shall conduct its administrative functions. The action of the commission in executing the ordinance, not the action of the electorate in accepting the ordinance, becomes administrative. ██ As the court states in *Martin* v. *Smith* (1960) 184 Cal.App.2d 571, 575 [7 Cal.Rptr. 725] : " 'Acts which are to be deemed as acts of administration, and classed among those governmental powers properly assigned to the executive department, are those which are necessary to be done to carry out legislative policies and purposes already declared by the legislative body, or such as are devolved upon it by the organic law of its existence.' "

Appellants' discussion of the changes in the structure of Palo Alto's municipal government which occurred in 1950 does not affect this conclusion. Prior to 1950 the city utilized a city council-board type of government composed of a council and three boards, extensive power being vested in the individual boards. The boards, as the commissions, advised the council. In 1950 the city adopted a council-city manager type of government whereby the council exercised all powers not delegated to the city manager. The charter provided that all boards, commissions, and committees "shall be advisory only and shall exercise no governmental or administrative powers." Appellants contend that the proposed ordinance attempts to amend the charter and give to the planning commission governmental and administrative powers. While the charter does state that the commission may not exercise administrative or governmental functions, it provides that the council shall fix the duties of the commission. Virtually any duty which might be delegated to the commission could be dubbed "administrative" if the term were to be used in its broadest sense. The proper inquiry must be whether or not the ordinance endows the commission with powers which

will bind the council. As we have seen, the commission will receive no such authority.

 Finally, appellants state that zoning ordinances are not subject to the initiative process. Even assuming the instant initiative encompasses a zoning ordinance, the council would not be subject to a state statute in enacting such an ordinance. (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 310-311 [144 P.2d 4].) Hence the electors in so doing cannot be subject to statute. Of course, we do not deal here with the question as to whether or not the ordinance actually involves a zoning ordinance and meets charter requirements; these are issues which we discuss *infra*. Clearly, as to the present problem, if the council may enact local zoning legislation, the electorate may also enact it.

*Dwyer* v. *City Council* (1927) 200 Cal. 505 [253 P. 932], involving the charter city of Berkeley, notes that zoning ordinances are subject to the initiative and referendum. The Berkeley charter provided that " '*Any* proposed ordinance may be submitted to the Council by a petition signed by registered electors of the City equal in number to the percentage hereinafter required.' " (P. 509.) This provision is identical with section 2, article VI of the Palo Alto charter. In *Dwyer*, the court stated, "Not only have the citizens of Berkeley in their charter failed to expressly exclude from the operation of the initiative and referendum ordinances of the kind in question, but they have phrased the sections pertaining to these powers in such broad, general, and unambiguous language as to impel the conclusion that it was intended that legislation on *every municipal subject* should, *unless expressly or by clear and necessary implication excluded,* be subject to a reference to the people for approval or rejection. In the charter provisions concerning the initiative the people reserved to themselves the right to enact *any* proposed ordinance by initiative proceedings. . . ." (P. 512; emphasis partly added.)

Although subsequent decisions have distinguished the *Dwyer* comment, none have specifically rejected it, and we believe the statement to be correct. It is true that *Hurst* v. *City of Burlingame, supra,* 207 Cal. 134 explains that *Dwyer* involved only a referendum and not an initiative measure, and that, since it ruled upon the power of a "city . . . operating under a freeholders' charter," (p. 142) it did not apply to a city not under such a charter. *Alexander,* too, remarks upon the distinction of *Dwyer* drawn by *Hurst,* and notes that

*Hurst* held that in *Dwyer* "the question of the operation of the initiative law to proceedings affected by the zoning act was not considered therein." (P. 825.)

Thus appellants' citations succumb to the distinguishing factor that they involved general law cities which attempted the enactment of zoning ordinances conflicting with the state zoning legislation. *Hurst* falls into that classification. So, too, does *Laguna Beach Taxpayers' Assn.* v. *City Council* (1960) 187 Cal.App.2d 412, 415 [9 Cal.Rptr. 775], which states: "[T]he statute which confers upon the legislative body of the city the power to enact zoning laws prescribes the method by which they are to be adopted or amended: that the method of enactment is the measure of the power to enact: and . . . the initiative process as used in this case does not conform to this method."

2. *The ordinance does not violate the legislative requirements and due process of law.*

We cannot accept appellants' arguments (1) that subdivision (f) of the ordinance is invalid because it "deprives the City Council of the power to zone or rezone certain property . . . until the completion of a comprehensive plan by the Planning Commission," (2) that the provision in effect "rezones" property which had been zoned subsequent to the adoption of the 1955 interim general plan, (3) that since subdivision (f) constitutes an amendment to the zoning ordinance, "the same procedure used in adopting . . . [the] ordinance must be followed in making changes," and (4) the "zoning ordinance requires a hearing before the adoption of any amendment thereto."

As to the first contention, we do not believe the legislation fails on appellants' theory that, pending the formation of a master plan, the council, and not the electorate, may exclusively exercise the power to freeze zoning. The cases firmly establish that the council may exercise such power. (*Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 496 [234 P. 381, 38 A.L.R. 1479]; *Lima* v. *Woodruff* (1930) 107 Cal.App. 285, 286 [290 P. 480]; *Hunter* v. *Adams* (1960) 180 Cal.App.2d 511, 518-519 [4 Cal.Rptr. 776].) The electorate, through the initiative, possesses no less power. So long as the charter itself does not preclude such "freezing," the electorate may exercise its legislative prerogative to protect a proposed master plan from interim destruction during its period of incubation.

▮ The second contention, that the subdivision attempts a ''rezoning'' of property previously zoned, finds no support in the language of the ordinance. Appellants argue that subdivision (f) prohibits '' 'industrial and manufacturing uses not embraced within the 1955 Interim General Plan' '' and, therefore, provides that any land zoned to industrial or manufacturing uses since 1955 must be rezoned to '' 'non-industrial or non-manufacturing' '' uses. Not only would such a requirement as to retroactive application probably be invalid, but also neither the language nor the manifested intent of the ordinance indicates any such application.

▮ Appellants' third contention that subdivision (f) constitutes an amendment to a zoning ordinance and therefore may only be effective if ''made in the same mode as the original enactment (*Johnston* v. *City of Claremont* (1958) 49 Cal. 2d 826, 835 [323 P.2d 71])," collapses because the provision does not amend a zoning ordinance. In order to render the whole of the ordinance effective it temporarily forestalls the legislative body from piecemeal action on a portion of its provisions. Unlike the situation in *Laguna Beach Taxpayers' Assn.* v. *City Council, supra,* 187 Cal.App.2d 412, in which the ''initiative architectural policy ordinance . . . propose[d] a policy that *all future buildings* in the city should conform to a type of architecture to be adopted'' (p. 415; emphasis added), the ordinance here does not provide for future permanent zoning but establishes a temporary protection against interim changes in zoning. It preserves the status quo until the planning commission can perform its functions. But even if we dealt with a zoning ordinance here, we must still observe that zoning is a ''municipal affair'' over which a charter city has supreme control and which lies beyond the scope of legislative action. (*Lindell Co.* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303, 310-311.)

▮ Appellants' fourth contention, that a city ordinance which amends zoning legislation cannot be subject to the initiative, because such a method violates due process, assumes that the ordinance is a zoning ordinance. Yet the ordinance freezes the property during the necessary interim period; it does not change the use of land or adversely affect the rights of property holders. Appellants' cases (*Hurst* v. *City of Burlingame, supra,* 207 Cal. 134; *Chase* v. *Kalber* (1915) 28 Cal.App. 561 [153 P. 397]) concerned attempts which had been made to change the permissive use of land. Appellants' additional cases holding that a property owner must be

accorded notice and hearing as to the zoning of property (*Gilgert* v. *Stockton Port District* (1936) 7 Cal.2d 384, 391 [60 P.2d 847]; *Berrata* v. *Sales* (1927) 82 Cal.App. 324, 327 [255 P. 538]; *Kissinger* v. *City of Los Angeles* (1958) 161 Cal.App.2d 454, 464 [327 P.2d 10]), fail to be pertinent for the same reason.

 Appellants' final argument urges that the present proposal could not properly constitute "an 'interim restriction on zoning' " because it does not conform to sections 36937 and 65806 of the Government Code and section 3, article VI of the Palo Alto charter. These sections of the Government Code apply to general law cities only and do not regulate charter cities. (Gov. Code, § 65304.) Section 3 of article VI of the charter applies to the referendum, not the initiative. Appellants' claim of alleged violation of due process and statutory or charter procedure finds no confirmation in allegation of fact or citation of applicable law.

3. *The ordinance is not void for vagueness.*

 Appellants object to an apparent inconsistency between Government Code sections 65460 and 65500. The first section provides that the commission "shall" prepare and adopt a master plan; the second, that the commission "may" prepare and adopt a master plan "for all or any part of the city. . . ." Clearly the former section applies to adoption of the master plan; the latter, to the area to be covered by such a plan. These sections are not inconsistent.

 Appellants' other arguments relate to an alleged failure to define terms. Words such as " 'Capital Improvement Program,' " " 'industrial and manufacturing,' " " 'embraced' " and the like may be interpreted as the need arises and are not vague per se.

Appellants' final arguments, that an initiative ordinance invalid in part is invalid in its entirety and that mandamus may not be used to compel a void act, may state sound principle, but they are irrelevant under the above analysis.

In final analysis of the council's main complaint that under the proposal it "can neither adopt or amend a Master Plan until the Planning Commission has acted," and that delay and inaction may "thwart all action," we believe that the council assumes, contrary to the normal and legal presumption, that the commission will not perform its duties. Moreover, the very purpose of the planning commission must be the preparation by that body of recommended plans for urban

planning; if the council can intercede before the expiration of the alloted time for the commission's task, the commission's work may be truncated. The preparation of master plans becomes a waste of energy if the tree which the commission plans to trim or espalier is subject to the council's severance at the roots.

The requirement that the council await the completion of the commission's recommendation does not improperly restrict the council's functions; the ordinance facilitates the performance of the council's duties by insuring that it acts upon completed rather than aborted plans of the commission. Nor does the proposal impair the council's prerogatives; the council retains the power of rejection or adoption. To allow the cook sufficient time to prepare the meal is not to say that the diner must eat it.

We find neither legal reason nor social justification for the council's emphatic assertion of an alleged power to act before the planning commission completes its preparation of a master plan. The public interest in the enactment of over-all rather than piecemeal municipal planning cannot be denied. On the other hand, the need for swift and uncoordinated council action before submission of the master plan is at best nebulous. We cannot but conclude that the council's position does not accord with orderly and successful administration.

We see no reason why the proposed ordinance should not be placed before the electorate for adoption or rejection. As the Supreme Court stated in *McFadden* v. *Jordan* (1948) 32 Cal. 2d 330, 332 [196 P.2d 787], ''The right of initiative is precious to the people and is one which the courts are zealous to preserve. . . .''

We affirm the order for issuance of a peremptory writ of mandate.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied June 7, 1962, and appellants' petition for a hearing by the Supreme Court was denied July 3, 1962. Tobriner, J. pro tem.,* did not participate therein.

---

*Assigned by Chairman of Judicial Council.