[S.F. No. 23085. In Bank. Dec. 26, 1974.]

BUILDERS ASSOCIATION OF SANTA CLARA-SANTA CRUZ COUNTIES, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
CITY OF SAN JOSE et al., Real Parties in Interest.

226

## COUNSEL

Mager, Matthews & Neider, Robert S. Sturges, Robert C. Burnstein and Roger J. Marzulla for Petitioner.

No appearance for Respondent.

Peter G. Stone, City Attorney, Collins, Hays, Stewart, Sanford & Latta, Walter V. Hays, William M. Siegel, County Counsel, and Charles F. Perrotta, Deputy County Counsel, for Real Parties in Interest.

Evelle J. Younger, Attorney General, Robert H. O'Brien, Assistant Attorney General, Nicholas C. Yost and E. Clement Shute, Jr., Deputy Attorneys General, as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**TOBRINER, J.**—Suffering from serious overcrowding in local schools, the result of explosive residential development during the past decade, and concerned with the inability of the school district to keep pace with

the anticipated influx of new residents, the voters of the charter city of San Jose enacted an initiative ordinance to restrict the zoning of land for residential use for a two-year period pending further study of the impact of residential development. The ordinance prohibits the rezoning of land for residential development within impacted areas of the city unless the school districts "in which the subject land is situated" certify that the party seeking rezoning has agreed to provide a satisfactory alternative to permanent school construction. Representing developers, lenders, architects, and other persons interested in residential construction in Santa Clara and Santa Cruz Counties, plaintiff association brought an action in the superior court to enjoin enforcement of the ordinance. The superior court entered judgment for defendants, and plaintiff sought mandate directly from this court.

■ We issued an alternative writ to consider plaintiff's contention that the residents of a charter city could not constitutionally enact a zoning ordinance by initiative, an issue of statewide importance then pending before this court in *San Diego Bldg. Contractors Assn.* v. *City Council, ante,* page 205 [118 Cal.Rptr. 146, 529 P.2d 570]. For the reasons set out in our opinion in the *San Diego* case, we find no constitutional impediment to the enactment of zoning measures by initiative. We therefore now turn to the other contentions presented by plaintiff.

Plaintiff association asserts that the ordinance (1) unconstitutionally limits the power of the city council to rezone property; (2) unlawfully delegates zoning authority to the school district; (3) establishes unreasonable classifications in violation of the equal protection clause; and (4) interferes with the constitutional right to travel. An examination of the specific provisions of the ordinance, however, will demonstrate the lack of merit in these contentions.

We begin by summarizing the substantive provisions of the ordinance.[1] Section 1 provides that for two years from its effective date "the

---

[1]Omitting the preamble, the ordinance reads as follows:
"1. For a period of two years from the date this ordinance becomes effective, the City Council of San Jose shall not zone, pre-zone, or re-zone any land for residential use, if such land is located in a school district where the total area of school building construction per pupil of estimated enrollment, counting the estimated enrollment of the

City Council of San Jose shall not zone, pre-zone, or re-zone any land for residential use" if such land is located in an overcrowded school district

proposed development itself, will be less than that computed under the following schedule:

| TYPE OF SCHOOL | ENROLLMENT | SQ. FT. PER PUPIL |
|---|---|---|
| Elementary school comprising kindergarten and grades 1 to 6 inclusive | 300 or more | 55 |
| Elementary school comprising grades 7 and 8 | 750 or more | 75 |
| Junior high school comprising grades 7 to 9 inclusive | 750 or more | 75 |
| Junior high school comprising grades 7 to 10 inclusive | 750 or more | 75 |
| High school comprising grades 7 to 12 inclusive | 750 or more | 80 |
| High school comprising grades 9 to 12 inclusive | 750 or more | 85 |
| High school comprising grades 10 to 12 inclusive | 750 or more | 85 |

"For purposes of this ordinance, the estimate of enrollment must be one which is valid for use under Section 19420 of the California Education Code, as amended.

"This section shall apply to ordinances which are adopted as urgency or emergency ordinances.

"2. During the aforesaid two-year period, the City of San Jose, in cooperation with all entities in any way responsible for community services within the City, and with maximum citizen participation, shall undertake a thorough study of all problems connected with further residential development in the City, including, but not limited to, the following:

"a) How all further residential developments can be allowed to take place only with insurance that all necessary community facilities will be provided concurrently with such development.

"b) Whether further residential development should be allowed if it violates any environmental standards, particularly those pertaining to water and air pollution, or overtaxes the ground water supply.

"c) What are the costs and benefits of further residential development, and how can the City ensure that any development that does take place shall constitute a net benefit to the City.

"d) How further residential development can be required to include an equitable proportion of housing for all income levels.

"e) What the optimum population level is for the City of San Jose, considering all environmental, economic, and other human factors.

"f) What actions can be taken to ease the shift of the San Jose economy to one less dependent on residential growth.

"3. The provisions of Section 1 of this ordinance shall not apply if there is filed with the City Council, by or on behalf of the governing bodies of all school districts in which the subject land is situated, written certification that the party seeking residential use has entered into binding agreements to provide a satisfactory temporary alternative to permanent school construction.

"4. If, prior to the closing of the City Council hearing on a proposed ordinance zoning or re-zoning property to a residential use, or granting any permit of any kind for residential use, there is filed with the City Council, by or on behalf of the governing body

as defined in the ordinance.[2] Section 2 requires the city to utilize the two-year freeze to undertake a thorough study of the problems connected with further residential developments. Section 3 offers an exception to the zoning freeze, permitting residential zoning if the school district certifies "that the party seeking residential use has entered into binding agreements to provide a satisfactory temporary alternative to permanent school construction." Section 4, the only substantive provision of the ordinance not limited to two years duration, states that if the school district files a written protest against adoption of any proposed zoning ordinance on the ground that its adoption would tend to cause impaction in district schools, the council may not adopt the ordinance unless it first rejects the protest by an affirmative vote of five of the seven members of the council.[3] Finally, section 5 prohibits repeal of the ordinance except by vote of the residents, and section 6 is a standard severability clause.

■  Plaintiff first attacks the constitutionality of the initiative ordinance because it limits the power of the city council to rezone property during the period of the interim freeze. Since no council could, by ordinance, bar a future council from considering zoning applications (cf. *Thompson* v. *Board of Trustees* (1904) 144 Cal. 281, 283 [77 P. 951]), plaintiffs argue that the people by initiative cannot so limit the council's power.[4] The courts, however, have upheld the right of residents of

of any school district in which the subject property is located, a written protest against the adoption of the proposed ordinance or permit, on the ground that said governing body has found that said ordinance or permit would tend to cause impaction in any individual school or schools in said district, then in that event the City Council shall not adopt said ordinance unless said Council first overrules such protest by an affirmative vote of five or more of its voters.

"This section shall apply to ordinances which are adopted as urgency or emergency ordinances.

"5. No part of this ordinance may be amended or repealed except by the voters of the City of San Jose at a regular municipal election.

"6. If any portion of this ordinance is declared invalid, the remaining portions are to be considered severable and valid."

[2]The initiative was enacted April 10, 1973, effective April 27, 1973.

[3]Plaintiff challenged the constitutionality of section 4 of the ordinance before the superior court, but did not raise that issue in its petition for mandamus before this court.

[4]Plaintiff also argues that the initiative violates the principle, stated in *Simpson* v. *Hite* (1950) 36 Cal.2d 125, 134 [222 P.2d 225], that "The initiative or referendum is not applicable where 'the inevitable effect would be greatly to impair or wholly destroy the efficacy of some *other* governmental power, the practical application of which is essential.' " (Italics added.) As the italicized word indicates, this principle serves to invalidate an initiative which, in limiting one governmental power, impairs or destroys the ability of government to exercise a different and more essential power. For example, in *Simpson* v. *Hite* itself, the court struck down an initiative which, by limiting the power of a board of supervisors to select the location of a courthouse, threatened to impair the

charter cities, in enacting zoning initiatives, to bar the city council from altering or repealing the zoning established by the initiative. (*Bayless* v. *Limber* (1972) 26 Cal.App.3d 463 [102 Cal.Rptr. 647]; *Fletcher* v. *Porter* (1962) 203 Cal.App.2d 313 [21 Cal.Rptr. 452].) We see no difference in principle between an initiative which bars a city council from repealing newly enacted zoning restrictions, and one which freezes existing restrictions; either, to be effective, must limit the power of a hostile city council to evade or repeal the initiative ordinance.

■  Contrary to plaintiff's contention, the initiative does not create a "power vacuum" under which no body has the authority to consider zoning applications; it represents an exercise by the people of their reserved power to legislate (*Ley* v. *Dominguez* (1931) 212 Cal. 587, 593 [299 P. 713]; *Gayle* v. *Hamm* (1972) 25 Cal.App.3d 250, 258 [101 Cal.Rptr. 628]), and the people retain the right to repeal the initiative or to grant exceptions to its reach (see *Blotter* v. *Farrell* (1954) 42 Cal.2d 804, 811 [270 P.2d 481]; Comment, *The Scope of the Initiative and Referendum in California* (1966) 54 Cal.L.Rev. 1717, 1727).

■  Plaintiff secondly contends that the ordinance unlawfully delegates authority over zoning to the school district.[5] The ordinance, however, does not confer upon the school district any power to rezone property; it provides that the council—which remains the only body which can grant an application to change zoning—will not approve residential zoning in impacted school districts without the district's certification that the district and developer have arrived at an agreement to provide the needed school facilities.

county's power to maintain its courts; *Campen* v. *Greiner* (1971) 15 Cal.App.3d 836, 843 [93 Cal.Rptr. 525] held invalid an initiative which, by limiting the power of a city council to levy taxes, threatened the city's ability to meet its financial obligations. Plaintiffs, however, point to no essential governmental power which will inevitably be impaired or destroyed by the enactment of an interim zoning freeze.

[5]Plaintiff also contends that the initiative ordinance unlawfully legislates on the subject of school construction, a field which, it alleges, is preempted by the state. (See *Hall* v. *City of Taft* (1956) 47 Cal.2d 177 [302 P.2d 574].) Plaintiff founds this argument upon the assertion that section 3 of the initiative can be interpreted to *require* school districts to enter into binding agreements to provide temporary alternatives to school construction. Section 3, however, imposes no duty upon school boards to enter into such agreements, and cannot reasonably be interpreted to imply such a duty. Plaintiff's proposed interpretation violates the principle that an initiative should be liberally construed to uphold its validity. (*Ley* v. *Dominguez, supra,* 212 Cal. 587, 593; *Blotter* v. *Farrell, supra,* 42 Cal.2d 804, 809; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 563-564 [11 Cal.Rptr. 340].)

In *City of Stockton* v. *Frisbie & Latta* (1928) 93 Cal.App. 277 [270 P. 270], property owners challenged a city ordinance which permitted nonresidential uses in residential zones only with the written consent of three-fourths of the neighboring property owners; the court held that since the council retained the ultimate power to grant or deny the use permit, the ordinance did not unlawfully delegate zoning authority to the neighboring property owners (93 Cal.App. 277, at p. 295). Cities commonly require certification that proposed subdivision improvements are adequate as a condition to approving the subdivision; it has never been suggested that such practice constitutes a delegation of the power to approve subdivisions to the certifying agency. If the principal difficulty with a proposed rezoning inheres not in its effect upon neighboring property or the possible inadequacy of its proposed improvements, but in its exacerbation of overcrowding in district schools, we see no reason why the city may not condition approval of the zoning application upon certification by the school district that adequate facilities can be provided.[6]

Plaintiff thirdly contends that the ordinance establishes an unconstitutional classification by discriminating between property lacking residential zoning and similar property which has already secured that zoning.[7] Subject to any applicable permit or subdivision requirements, an owner whose property is zoned for residential use may construct a residence in conformity with that zoning; the owner whose property is not residentially zoned can only hope that he can persuade the council to grant him a change in zoning. Certainly there is nothing irrational in the voters' determination to permit residential construction,

---

[6]Plaintiffs suggest that the school district might require a property owner to dedicate land, construct improvements, or pay fees as a condition to certification. The imposition of such conditions, however, would not necessarily render the ordinance invalid, particularly if the conditions related to the need for increased facilities created by the zoning change. (See generally Feldman, *Constitutionality of Subdivision Exactions for Educational Purposes* (1972) 76 Dick.L.Rev. 651.) In *Jordan* v. *Village of Menomonee Falls* (1966) 28 Wis.2d 608 [137 N.W.2d 442, 448-450], the Wisconsin Supreme Court upheld an ordinance requiring dedication of land for school purposes, or payment of a fee in lieu of dedication, if the need for increased facilities was attributable to the developer's activities; we in turn relied on *Jordan* in *Associated Home Builders etc., Inc.* v. *City of Walnut Creek* (1971) 4 Cal.3d 633, 644 [94 Cal.Rptr. 630, 484 P.2d 606], to uphold a statute requiring dedication of land for parks.

[7]Plaintiff's other equal protection arguments assume that school districts, before entering into and certifying agreements to provide temporary school facilities, will exact from the developer payments disproportionate to the increased need for school facilities created by the development. The record before us contains no facts to support such charges.

pending completion of a thorough study of problems of residential development, only by those owners whose property has already been found suitable for such construction.[8]

■ Plaintiff finally contends that the initiative ordinance interferes with a constitutional right to travel and to live in the community of one's choosing. We need not, however, explore the unsettled boundaries of this constitutional right, nor confront the difficult task of balancing that right against the right of a city to enact zoning restrictions to promote the quality of civic life (see *Village of Belle Terre* v. *Boraas* (1974) 416 U.S. 1, 7 [39 L.Ed.2d 797, 803, 94 S.Ct. 1536, 1541]). The zoning freeze established by the initiative here at issue is limited to two years duration, and applies only to that portion of the city plagued with the problem of overcrowded schools. Even within that portion of the city, the ordinance permits rezoning if the developer will agree to assist the school district in meeting the need for additional facilities which his development has created. Consequently the initiative need not serve to exclude newcomers from San Jose; it may, instead simply divert some development to districts with adequate school facilities, while providing overcrowded districts with the means to accommodate the needs of new residents. The trial court here found that the initiative has not in fact significantly reduced the supply of new housing in San Jose; plaintiff does not challenge that finding. We conclude that plaintiff has failed to demonstrate that the ordinance imposes any noticeable or significant infringement upon the asserted constitutional right to travel.[9]

We conclude that the initiative zoning ordinance enacted by the voters of the charter city of San Jose violates no provision of the state or federal Constitutions. The alternative writ of mandate heretofore issued is therefore discharged, and the petition for writ of mandate is denied.

Wright, C. J., Sullivan, J., and Files, J.,* concurred.

---

[8]The discrimination enacted by the ordinance is economic in character, and hence valid if rationally related to a legitimate legislative purpose (see *Town of Los Altos Hills* v. *Adobe Creek Properties, Inc.* (1973) 32 Cal.App.3d 488, 508-509 [108 Cal.Rptr. 271] and cases there cited).

[9]We see no inconsistency between the San Jose General Plan, which contemplates eventual residential development of land now zoned for agriculture, and the initiative's two-year freeze on new residential zoning.

*Assigned by the Chairman of the Judicial Council.

**BURKE, J.**\*—I dissent, for the reasons stated in my dissenting opinion in *San Diego Bldg. Contractors Assn.* v. *City Council, ante,* page 205 [118 Cal.Rptr. 146, 529 P.2d 570]. In the instant case the two-year moratorium upon further residential zoning constitutes a substantial restriction upon land use and could have a drastic effect upon property values in the area. Thus, due process principles would require that affected property owners be given notice and hearing before the moratorium goes into effect.

Real parties in interest urge that ordinance 16764 is a valid "interim zoning" provision which, under the cases, may be enacted on an emergency basis without the necessity of notice or hearing. Yet, assuming that an initiative-created ordinance can ever be characterized as an "emergency" measure, the applicable authorities recognize that if interim zoning (i.e., a zoning "freeze") is accomplished without the benefit of notice and hearing, the freeze period must be of reasonably brief duration. For example, the state zoning law provides for a *four-month* period which may be extended only after public hearings have taken place. (Gov. Code, § 65858.) A provision which requires an unreasonably long prehearing restriction could constitute a denial of due process of law.

The interim zoning cases upon which real parties rely are, in large part, inapposite for they fail to address the question whether notice and hearing must be given in order to validate an interim freeze of substantial duration. It is, of course, the rule in this state that interim zoning in appropriate circumstances is a proper exercise of the police power vested in all municipal bodies. Thus, in *Miller* v. *Board of Public Works,* 195 Cal. 477 [234 P. 381, 38 A.L.R. 1479], this court upheld an ordinance which temporarily prohibited the construction of multi-family apartments pending completion of a city-wide plan contemplating development of the affected area as residential. Although the ordinance in *Miller* was described as an "emergency" measure, the court did not discuss the question whether notice and hearing was given or, if not, was required. (See also *Lima* v. *Woodruff,* 107 Cal.App. 285 [290 P. 480]; *Hunter* v. *Adams,* 180 Cal.App.2d 511 [4 Cal.Rptr. 776].)

The first interim zoning case to approach the issue before us is *Mang* v. *County of Santa Barbara,* 182 Cal.App.2d 93 [5 Cal.Rptr. 724], involving an ordinance which indefinitely prohibited the granting of

---

\*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

certain building permits pending adoption of a permanent ordinance on the subject. A property owner complained that the ordinance was enacted without notice or hearing as required by the state zoning laws. The court, without considering the due process issue, noted that under the then-existing statutory provision (former Gov. Code, § 65806), the governing body was permitted to adopt "as an urgency measure, a temporary interim zoning ordinance" prohibiting uses in conflict with a proposed, but not yet enacted, zoning ordinance. The court explained that, under the record in that case, it was clear that the ordinance "was obviously intended to be limited in duration and to expire upon the adoption of the permanent ordinance as to which studies were in progress. Nothing in [former] section 65806 requires the fixing of a precise time limit . . . ." (P. 99.) The court stated further that ". . . a permanent zoning ordinance was in fact adopted within a reasonable time." (P. 98.)

Thereafter, in 1961, the Legislature amended section 65806 (perhaps in response to the 1960 *Mang* decision) to provide that an emergency interim zoning provision could extend no longer than one year, unless notice and hearing were afforded. Subsequently, in *Metro Realty* v. *County of El Dorado*, 222 Cal.App.2d 508 [35 Cal.Rptr. 480], the court upheld an emergency interim zoning ordinance which temporarily prohibited certain construction pending adoption of a comprehensive plan. The court, noting that the ordinance in fact had a "very brief life" (p. 517), stated that "When the permanent plan and a zoning ordinance thereunder are before the county for adoption, notice and hearing will be required *as an essential part of procedural due process.* [Citation.]" (Italics added; p. 518.) The court concluded that the adoption of the short-lived urgency ordinance was proper despite the lack of notice or hearing.

Following the *Metro* case, and in 1965, the Legislature once again amended the interim ordinance provisions of the state zoning laws. Section 65806 was repealed and section 65858 adopted in its place to provide that an interim ordinance "shall be of no further force and effect 90 days from the date of adoption thereof. . ." unless the legislative body by a four-fifths vote *and after notice and hearing is given* extends the ordinance for one year; not more than two such extensions are permitted. Subsequently, in 1971, the 90-day period was deleted and a four month's period inserted, and provision was made for two subsequent extensions, *following notice and hearing,* of eight months and one year respectively. Thus, the Legislature presently considers *four months* a

reasonable period to permit the operation of an emergency interim zoning ordinance.

Real parties urge that since charter cities are exempt from the provisions of the state zoning law, and particularly the four-month limitation of section 65858 (see Gov. Code, §§ 65803-65804), such cities properly may provide for a longer period of time before requiring notice and hearing to affected property owners. (*Fletcher* v. *Porter*, 203 Cal.App.2d 313, 325 [21 Cal.Rptr. 452].) Yet, as I have pointed out my dissent in the *San Diego* case, *ante,* page 205, although charter cities and counties are not bound by the specific provisions of the state zoning law, they are required to meet those minimum standards necessary to provide property owners with due process of law. Although it is difficult to specify the precise limitations which constitutional principles impose upon the power of a city to enact "emergency" interim zoning ordinances without notice and hearing, the four-month limitation set forth in section 65858 appears reasonable in light of the apparent ease of holding public hearings to authorize an extended "freeze" period. In any event, the two-year prehearing freeze period authorized by the subject ordinance seems clearly excessive; real parties make no effort to explain why property owners should be required to wait two years before they are afforded an effective opportunity to be heard.[1] As stated by one commentator, "The duration of a charter city interim ordinance is controlled by the individual charter or municipal code. If there is no time limitation, *or the ordinance will not terminate within a reasonable time by its own terms,* an argument could be made that the ordinance is permanent. *Due process would then suggest the need to comply with the more formal requirements necessary to enact permanent ordinances."* (Italics added; Cal. Zoning Practice (Cont.Ed.Bar) p. 122, § 4.30; see also *Metro Realty* v. *County of El Dorado, supra,* 222 Cal.App.2d 508, 516; Comment, 18 Syracuse L.Rev. 837, 846-847, 850; Annot., 30 A.L.R.3d 1196, 1214-1217, and cases cited.)

---

[1] I do not mean to suggest that, if the requisite notice and hearing were afforded, a two-year freeze nevertheless would be excessive. In view of the evident difficulties inherent in drafting comprehensive zoning plans, "we may take judicial notice of the fact that it will take much time to work out the details of such a plan and that obviously it would be destructive of the plan if, during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan." (*Miller* v. *Board of Public Works, supra,* 195 Cal. 477, 496.) It has been suggested that one to three years may be required in order to complete the requisite studies necessary to draft an acceptable plan. (Anderson, American Law of Zoning, § 5.15, p. 275.)

I conclude that the ordinance at issue is invalid for lack of provision for notice and hearing. A writ of mandate should issue directing the trial court to order a preliminary injunction as requested by petitioner.

McComb, J., and Clark, J., concurred.

Petitioner's application for a rehearing was denied February 19, 1975. Files, J.,* sat in place of Mosk, J., who deemed himself disqualified. McComb, J., and Clark, J., were of the opinion that the petition should be granted.

---

*Assigned by the Chairman of the Judicial Council.