**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHULA VISTA CITIZENS FOR JOBS AND FAIR COMPETITION; LORI KNEEBONE; LARRY BREITFELDER; ASSOCIATED BUILDERS AND CONTRACTORS OF SAN DIEGO, INC., *Plaintiffs-Appellants*, | No. 12-55726 D.C. No. 3:09-cv-00897-BEN-JMA |
| v. | OPINION |
| DONNA NORRIS; MAYOR CHERYL COX; PAMELA BENSOUSSAN; STEVE CASTANEDA; JOHN MCCANN, in his official capacity as Member of the Chula Vista City Council; RUDY RAMIREZ, JR., in his official Capacity as Member of the Chula Vista City Council, *Defendants-Appellees*, | |
| STATE OF CALIFORNIA, *Intervenor-Defendant—Appellee.* | |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted En Banc
December 16, 2014—Pasadena, California

Filed April 3, 2015

Before: Sidney R. Thomas, Chief Judge, and Stephen Reinhardt, Barry G. Silverman, Susan P. Graber, M. Margaret McKeown, William A. Fletcher, Ronald M. Gould, Richard C. Tallman, Johnnie B. Rawlinson, Consuelo M. Callahan, and N. Randy Smith, Circuit Judges.

Opinion by Judge Reinhardt

## SUMMARY[*]

### Civil Rights

The en banc court affirmed the district court's summary judgment in an action brought under 42 U.S.C. § 1983 challenging two requirements that the State of California and the City of Chula Vista, California, place on persons who wish to sponsor a local ballot measure: (1) the requirement that the official proponent of a ballot measure be an elector, thereby disqualifying corporations and associations from holding that position; and (2) the requirement that the official proponent's name appear on each section of the initiative petition that is circulated to voters for their signature.

The en banc court held that the requirement that the official proponent of an initiative be an elector, thereby excluding corporations and associations from holding that

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

position, does not violate the plaintiffs' First Amendment rights to freedom of speech and association. The en banc court also held that the requirement that the name of the official proponent of an initiative be disclosed on the face of the initiative petitions withstands exacting scrutiny under the First Amendment.

**COUNSEL**

James Bopp, Jr. (argued), and Richard E. Coleson, Bopp Law Firm, Terre Haute, Indiana; Charles H. Bell, Jr., and Brian T. Hildreth, Bell, McAndrews & Hiltachk, Sacramento, California; Gary D. Leasure, Workman Leasure, San Deigo, California, for Plaintiffs-Appellants.

Charles A. Bird (argued), McKenna Long & Aldridge, San Diego, California, for Defendants-Appellees.

George Waters (argued), Deputy Attorney General; Kamala D. Harris, Attorney General; Douglas J. Woods, Senior Assistant Attorney General; Peter A. Krause, Supervising Deputy Attorney General, Sacramento, California, for Intervenor-Defendant—Appellee.

Dennis J. Herrera, City Attorney; Christine Van Aken, Chief of Appellate Litigation; Joshua S. White and Andrew Shen, Deputy City Attorneys, San Francisco City Attorney's Office, San Francisco, California, for Amici Curiae League of California Cities.

**OPINION**

REINHARDT, Circuit Judge:

The plaintiffs in this case bring a First Amendment challenge to two requirements that the State of California and the City of Chula Vista, California, place on persons who wish to sponsor a local ballot measure: (1) the requirement that the official proponent of a ballot measure be an elector, thereby disqualifying corporations and associations from holding that position ("the elector requirement"); and (2) the requirement that the official proponent's name appear on each section of the initiative petition that is circulated to voters for their signature ("the petition disclosure requirement"). We hold, as did the district court, that both requirements are plainly constitutional.

**I.**

This case arises from the plaintiffs' efforts to place on the ballot what ultimately became Proposition G, an initiative prohibiting the City of Chula Vista from entering into Project Labor Agreements. Such agreements require that contractors hired by the city to build public works projects pay their employees a prevailing wage. The plaintiffs consist of Chula Vista residents Lori Kneebone and Larry Breitfelder; Chula Vista Citizens for Jobs and Fair Competition ("CVC"), an unincorporated association and a ballot measure committee; and Associated Builders and Contractors of San Diego, Inc. ("ABC"), an incorporated association of construction-related businesses. ABC is CVC's largest donor. CVC and ABC wished to serve as the official proponents of Proposition G, but because an official proponent must be an elector, they asked two CVC members—Kneebone and Breitfelder—to

serve as proponents so that the measure might be accepted by the city clerk. Kneebone and Breitfelder agreed. CVC and ABC paid for all of the expenses associated with qualifying the initiative for the municipal ballot.

A brief overview of the laws governing the qualification of an initiative for the municipal ballot is in order. Section 903 of the Chula Vista City Charter provides that "[t]here are hereby reserved to the electors of the City the powers of the initiative and referendum and of the recall of municipal elective officers." Section 903 then adopts the provisions of the California Elections Code governing municipal initiatives, referenda, and recall elections "so far as such provisions of the Elections Code are not in conflict with this Charter." The California Elections Code in turn provides a three-step process that official proponents must follow in order to qualify an initiative for the municipal ballot.

First, an official proponent must file a notice of intent to circulate a petition with the city clerk. The notice must include the text of the proposed measure and the signature of at least one, but not more than three, official proponents. Cal. Elec. Code § 9202(a).[1] Within fifteen days of the filing of the notice, the city attorney must prepare a ballot title and brief summary of the initiative, which is provided to the official proponents. *Id.* § 9203.

Next, the official proponent must publish in a local newspaper of general circulation the notice of intent, accompanied by the title and summary prepared by the city

---

[1] Additionally, the notice "*may* be accompanied by a written statement not in excess of 500 words, setting forth the reasons for the proposed petition." Cal. Elec. Code § 9202(a) (emphasis added).

attorney. *Id.* § 9205(a).[2] The effect of this requirement is that the official proponent's name—by way of the required signature on the notice of intent—is published. Proof of publication must be provided to the city clerk within ten days of publication. *Id.* § 9206.

Once publication occurs, the official proponent may begin circulating the initiative petitions and collecting signatures from registered voters. *Id.* § 9207. A petition typically is circulated in sections in order to facilitate signature gathering. *Id.* § 9201. "Each section of the petition shall bear a copy of the notice of intention and the title and summary prepared by the city attorney." *Id.* § 9207. Thus, the official proponent's name must appear on the face of the circulated petitions, again by way of the signed notice of intent. The official proponent has 180 days from the date of receipt of the title and summary to file the signed petitions with the city clerk. *Id.* § 9208. The city clerk then verifies the signatures on the petitions and notifies the official proponent whether there are sufficient signatures to qualify the measure for the ballot. *Id.* §§ 9210, 9114, 9115. If there are enough valid signatures, the city council must either adopt the measure as is or place it on the ballot. *Id.* §§ 9214, 9215.[3]

---

[2] If there is no newspaper of general circulation in the city, the same information must be published in a county newspaper of general circulation and posted in three designated public places. *Id.* § 9205(b). If there is no county newspaper of general circulation, either, then posting in three designated public places suffices. *Id.* § 9205(c).

[3] Depending on the number of valid signatures collected, the City Council either orders a special election or places the measure on the ballot during the next regularly scheduled election. *Id.* §§ 9214, 9215.

Kneebone and Breitfelder made two attempts to place Proposition G on the municipal ballot, the first of which is the subject of the instant litigation. During the first attempt, Kneebone and Breitfelder properly filed a signed notice of intent and complied with the publication requirements. After circulating the petitions, they submitted to Chula Vista City Clerk Donna Norris petitions bearing 23,285 signatures. However, Norris rejected the petitions because Kneebone and Breifelder had not included their names as the official proponents on the circulated petitions. Kneebone and Breitfelder objected that CVC and ABC were the true proponents of the initiative, and that they had accordingly printed CVC and ABC's names on the circulated petitions instead of their own names. When Norris responded that she could not process the signatures because the petitions did not comply with the Elections Code, Kneebone and Breitfelder restarted the process, this time in compliance with all of the statutory requirements. As a result of this second effort to qualify the measure, Proposition G appeared on the June 8, 2010 municipal election ballot and was approved by the Chula Vista voters.

The plaintiffs filed the instant suit under 42 U.S.C. § 1983 in the Southern District of California on April 28, 2009—after Norris refused to process the first initiative petition but while the efforts to qualify the second petition for the ballot were ongoing. The complaint alleged that the requirements that an official proponent be an elector and that his name appear on the face of the circulated petitions violate the First and Fourteenth Amendments, both facially and as

applied.[4] The plaintiffs sought declaratory and injunctive relief.

On June 4, 2009, the plaintiffs moved for a preliminary injunction and an expedited hearing. The State of California intervened as a defendant to defend the constitutionality of the state election laws adopted by Chula Vista's City Charter. The district court held a hearing on the motion for a preliminary injunction on August 19, 2009. The next day, it ordered supplemental briefing on whether state election law requires an official proponent to be a natural person. On March 8, 2010, the district court denied the preliminary injunction as moot in light of the fact that the plaintiffs' second attempt to qualify Proposition G for the ballot had succeeded. It also stayed the case pending the Supreme Court's decision in *Doe v. Reed*, 561 U.S. 186 (2010). When the stay was lifted, both sides filed cross-motions for summary judgment. On March 22, 2012, the district court denied the plaintiffs' motion and granted summary judgment to the defendants, upholding both the elector and disclosure requirements—requirements that it held were imposed by both the state elections code and the city's municipal charter. This appeal followed.

## II.

The plaintiffs first assert that the requirement that an official proponent be an elector violates their rights to freedom of speech and association under the First Amendment by preventing non-natural persons—that is, corporations and associations—from serving as official

---

[4] Under the Fourteenth Amendment, the First Amendment is applicable to actions by the states. *Everson v. Bd. of Educ.*, 330 U.S. 1, 8 (1947).

proponents.[5] We conclude that the State of California and the City of Chula Vista do not violate the First Amendment by requiring that an official proponent—a person seeking a unique position in a quintessentially legislative process—be an elector.

## A.

As a preliminary matter, the plaintiffs dispute the source of the requirement that the official proponent of a municipal initiative be an elector and, therefore, a natural person. According to the plaintiffs, it is merely Chula Vista's "enforcement policy" that prohibits non-natural persons from serving as official proponents, rather than any provision of state or local law, and this undercuts "any purported interest supporting such a Requirement." Appellants' Br. 8; Appellants' Reply Br. 2. This argument has no merit.

The California Constitution provides that "[t]he initiative is the power of the *electors* to propose statutes and amendments to the Constitution and to adopt or reject them," Cal. Const. art. II, § 8(a) (emphasis added), and that "[i]nitiative and referendum powers may be exercised by the *electors* of each city or county under procedures that the Legislature shall provide." Cal. Const. art. II, § 11(a) (emphasis added). The Chula Vista City Charter likewise

---

[5] The plaintiffs' briefs also assert in passing that the elector requirement violates their right to petition the government, but they neither develop this claim nor provide any legal authority to support it. Accordingly, our analysis of the elector requirement focuses on the freedom of speech and association claims. *See Acosta-Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1993) (explaining that an issue raised in a brief but not supported by argument or citations to legal authority may be deemed abandoned unless a failure to review the issue would result in manifest injustice).

provides that "[t]here are hereby reserved to the *electors* of the City the powers of the initiative and referendum and of the recall of municipal elective officers." City of Chula Vista Charter § 903 (emphasis added). State election law, which the Chula Vista Charter adopts, then defines an "elector" as "any person who is a United States citizen 18 years of age or older and . . . is a resident of an election precinct at least 15 days prior to an election." Cal. Elec. Code § 321(a); *see also People v. Darcy*, 139 P.2d 118, 123 (Cal. Ct. App. 1943) ("An elector is one who has the qualifications to vote but may not have complied with the legal requirements, that is, the conditions precedent to the exercise of his right to vote."), *disapproved on other grounds by Murgia v. Mun. Court*, 540 P.2d 44, 54 n.11 (Cal. 1975).

These provisions mean what they say: only natural persons (also known as human beings) who have the qualifications to vote may undertake official roles in California's initiative process, including the role of official proponent. The plaintiffs contend that the California Constitution "merely says that electors 'propose' initiatives by signing petitions in sufficient number to qualify them for the ballot and then 'adopt or reject' them. It says nothing about who may be proponents." Appellants' Br. 9–10. It is obvious, however, that a "proponent" is one who "proposes," and that an official proponent exercises initiative powers. *See* Webster's New World Dictionary 1078 (3d Coll. ed. 1988). Thus, both the California Constitution and the Chula Vista City Charter plainly reserve to electors the right to be proponents. *See* Cal. Const. art. II, §§ 8, 11; City of Chula Vista Charter § 903. Nor do the plaintiffs offer any arguments that would convince a reasonable jurist that these state and local laws mean something other than their plain meaning—that an official proponent must be an elector and

thus a natural person. *See United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) ("If the plain language of a statute renders its meaning reasonably clear, [we] will not investigate further unless its application leads to unreasonable or impracticable results." (alteration in original) (internal quotation marks omitted)).[6]

---

[6] The plaintiffs make two additional arguments in support of their claim that the elector requirement is merely an "enforcement policy" of the city. First, they point out that California Elections Code § 342, which defines "[p]roponent or proponents of an initiative or referendum measure," was amended during the pendency of this case so that the proponent of a statewide initiative is described as an "elector" while the proponent of "other initiative . . . measures" is a "person." (Previously, both statewide and local proponents were described by the statute as a "person.") They assert that this distinction must be meaningful, and that "person" must be broader than "elector" and must include non-natural persons. Second, the plaintiffs point to a number of cases in which an association served as an official proponent, or at least is described as a "proponent." Neither of these arguments succeeds in light of our holding that the California Constitution and the Chula Vista City Charter each imposes the elector requirement. *See Domar Electric, Inc. v. City of Los Angeles*, 885 P.2d 934, 938 (Cal. 1994) ("[T]he charter represents the supreme law of the City, subject only to conflicting provisions in the federal and state constitutions and to preemptive state law.").

Additionally, our review of the legislative history of the amendment to section 342 indicates that the change to the definition of "proponent" was not intended to be substantive. *See* Sen. Rules Comm., Third Reading Analysis, Assem. Bill 753 (2009–2010 Reg. Sess.), Sept. 3, 2009 (describing the legislation as a "code cleanup measure" sponsored by the Secretary of State "to reorganize, update, and clarify" the elections code provisions pertaining to *statewide* initiatives).

Finally, none of the cases cited by the plaintiffs addressed the question whether an association or corporation may serve as an official proponent. *See United States v. City of Oakland*, 958 F.2d 300 (9th Cir. 1992); *Glendale Tenants Ass'n v. City of Glendale*, No. B175160, 2005 WL 419409 (Cal. Ct. App. 2005) (unpublished); *MHC Fin. Ltd. P'ship*

Norris asserts as a fallback position that if we have any doubt, we should exercise our discretion to abstain under the doctrine announced in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and allow state courts to resolve the matter. We do not do so for two reasons. First, we do not find any such ambiguity; thus abstention would be inappropriate. *See City of Houston v. Hill*, 482 U.S. 451, 467–68 (1987). Second, "[a]bstention is . . . the exception and not the rule," and it is strongly disfavored in First Amendment cases. *Id.* at 467. "It is rarely appropriate for a federal court to abstain under *Pullman* in a First Amendment case, because there is a risk in First Amendment cases that the delay that results from abstention will itself chill the exercise of the rights that the plaintiffs seek to protect by suit." *Porter v. Jones*, 319 F.3d 483, 486–87 (9th Cir. 2003). "'Indeed, constitutional challenges based on the [F]irst [A]mendment right of free expression are the kind of cases that the federal courts are particularly well-suited to hear. That is why abstention is generally inappropriate when [F]irst [A]mendment rights are at stake.'" *See id.* at 492 (quoting *J-R Distribs., Inc. v. Eikenberry*, 725 F.2d 482, 487 (9th Cir. 1984), *overruled on other grounds by Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985)). We conclude that this

---

*Two v. City of Santee*, 23 Cal. Rptr. 3d 622 (Ct. App. 2005); *Alliance for a Better Downtown Millbrae v. Wade*, 133 Cal. Rptr. 2d 249 (Ct. App. 2003); *Save Stanislaus Area Farm Econ. v. Bd. of Supervisors*, 16 Cal. Rptr. 2d 408 (Ct. App. 1993); *Citizens for Responsible Behavior v. Superior Court*, 2 Cal. Rptr. 2d 648 (Ct. App. 1991); *Coal. for Fair Rent v. Abdelnour*, 165 Cal. Rptr. 685, 691 (Ct. App. 1980). We agree with the district court that the fact that in some cities and counties associations may have served as proponents in the past without being challenged says nothing about the existence or validity of the elector requirement. *See Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 875 F. Supp. 2d 1128, 1137 n.9 (S.D. Cal. 2012).

case does not fall within the "'extraordinary and narrow exception to the duty of a . . . court to adjudicate a controversy.'" *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (brackets omitted) (quoting *Canton v. Spokane Sch. Dist. No. 81*, 498 F.2d 840, 845 (9th Cir. 1974), *overruled on other grounds as recognized by Heath v. Cleary*, 708 F.2d 1376, 1378 n.2 (9th Cir. 1983)). We now turn to the merits of the plaintiffs' claim that the elector requirement violates the First Amendment.[7]

## B.

"States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally." *Buckley v. Am. Constitutional Law Found., Inc. ("ACLF")*, 525 U.S. 182, 191 (1999). True, every state law regulating elections, "whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). States of course may not adopt "voter qualifications which invidiously discriminate," *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666 (1966), but "'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to

---

[7] That the plaintiffs have successfully qualified Proposition G for the ballot and the voters of Chula Vista have approved it does not moot this case because it is "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 735 (2008).

accompany the democratic processes,'" *Anderson*, 460 U.S. at 788 (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). As a result, "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *see also ACLF*, 525 U.S. at 192 ("[N]o litmus-paper test will separate valid ballot-access provisions from invalid interactive speech restrictions . . . ." (internal quotations marks omitted)).[8] "[T]he state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788.

The elector requirement does not impose any meaningful burden on First Amendment rights. The plaintiffs seek a legislative power and, as they conceded at oral argument, many legislative and official political acts are properly reserved to members of the electorate. For example, corporations cannot vote. U.S. Const. amend. XXVI; Cal. Const. art. II, § 2. Nor can they run for political office or be appointed to fill vacancies. U.S. Const. art I, §§ 2–3; U.S. Const. art. II, § 1; U.S. Const. amend. XII; U.S. Const. amend. XXV; Cal. Const. art. IV, § 2; Cal. Const. art. V, § 2. Under California law, they cannot sign initiative petitions, Cal. Const. art. II § 8; Cal. Elec. Code § 9207, sign candidate nominating papers, Cal. Elec. Code § 8060, or introduce legislation, Standing Rules of the Senate, 2015–2016 Reg. Sess., Rule 28.5; Standing Rules of the Assemb., 2015–2016

---

[8] The defendants contend that the First Amendment has no application to the elector requirement because it is a regulation of the legislative process. We need not decide the question, as we conclude that in any event the elector requirement survives First Amendment scrutiny.

Reg. Sess., Rule 47.**[9]** The plaintiffs fail to provide any reason—and we find none—that the state and city may not similarly limit the exercise of the initiative power to members of the relevant political community: electors.

The initiative power that California and the City of Chula Vista have reserved to electors is indisputably a legislative power. *See* Cal. Const. art. II, § 8; Cal. Const. art. II, § 11; City of Chula Vista Charter § 903. The initiative system reserves to "the voters of California the authority to *directly* propose and adopt state constitutional amendments and statutory provisions," and the California Supreme Court characterizes this as "essentially a legislative authority." *Perry v. Brown*, 265 P.3d 1002, 1016, 1027 (Cal. 2011); *see also Builders Ass'n of Santa Clara-Santa Cruz Cntys. v. Superior Court*, 529 P.2d 582, 586 (Cal. 1974) (explaining that the initiative "represents an exercise by the people of their reserved power to legislate"); *Widders v. Furchtenicht*, 84 Cal. Rptr. 3d 428, 439–40 (Ct. App. 2008) ("The initiative process . . . is a method of enacting legislation . . . ."); *Carlson v. Cory*, 189 Cal. Rptr. 185, 187 (Ct. App. 1983) ("Our State Constitution clearly indicates that the power of the initiative is the separate and distinct power of the people to legislate[.]"). Much like a legislator who begins the traditional legislative process by placing a bill in the hopper, an official proponent commences the process of legislating by initiative by asking voters to sign a petition to place an initiative on the ballot. *See Widders*, 84 Cal. Rptr. 3d at 438. Thus, by seeking to serve as official proponents, the plaintiffs seek to wield a legislative power.

---

**[9]** Available at http://tinyurl.com/CAlegSR4; http://tinyurl.com/CAHR1.

Not only do the corporate and associational plaintiffs wish to participate in this legislative process, they assert that they are entitled to serve as official proponents—a "unique role . . . in the constitutional initiative process." *Perry*, 265 P.3d at 1006. Under California law, "the official proponents of an initiative measure are recognized as having a distinct role—involving both authority and responsibilities that differ from other supporters of the measure—with regard to the initiative measure the proponents have sponsored." *Id.* at 1017–18. After submitting the text of a proposed measure to an elections official and notifying the public of the commencement of the initiative process, Cal. Elec. Code §§ 9202, 9205, "[t]he proponents [have] the direct responsibility to manage and control the ballot-qualifying and petition-filing process." *Perry*, 265 P.3d at 1024. The official proponent oversees the process of collecting signatures from voters supporting the initiative, and only the official proponent may authorize the filing of the signed initiative petitions—the final step before a measure is placed on the ballot. Cal. Elec. Code §§ 9207, 9210. The official proponent then controls which arguments in support of the measure will appear in the pamphlet printed and distributed to voters by the elections official. *Id.* §§ 9282, 9287. Finally, if public officials decline to defend a challenged voter-approved initiative, under state law the official proponent may intervene or appear as a real party in interest "in order to assert the *people's* and hence the *state's* interest in the validity of the measure." *Perry*, 265 P.3d at 1006. *But see Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663–67 (2013) (holding that official proponents of California's Proposition 8 lacked federal constitutional standing). Thus, while all California voters play a quasi-legislative role in the initiative process, the official proponent is particularly akin to a legislator—sponsoring legislation and shepherding it through

the legislative process. Indeed, like a legislator introducing legislation, and unlike a mere lobbyist (the plaintiffs' preferred characterization), an official proponent performs a series of *necessary* steps for the people to exercise the power to legislate by initiative.

We have no doubt that states and cities may, wholly consistent with the First Amendment, require that those who seek to propose legislation—and to play a special role with unique responsibilities and powers in the legislative process— be electors. The issue here is in some respects analogous to that in *Nevada Commission on Ethics v. Carrigan*, in which the Supreme Court held that a legislator lacks a First Amendment right to cast a vote on any given matter before the legislature: "a legislator has no [First Amendment] right to use official powers for expressive purposes." 131 S. Ct. 2343, 2351 (2011). The Court explained that a legislator's vote "is a core legislative function" and that "[t]his Court has rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message." *Id.* at 2347, 2351 (internal quotation marks omitted) (citing *Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997)). Much like the recusal provision at issue in *Carrigan*, the elector requirement in this case restricts who may exercise official, legislative powers and, at most, only incidentally burdens core political speech. Therefore, in assessing "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff[s] seek[ ] to vindicate," *Anderson*, 460 U.S. at 789, we conclude that, in line with *Carrigan*, the State of California and the City of Chula Vista may reserve the power to legislate to the people by way of the elector requirement without posing anything

more than, at most, an incidental burden on First Amendment rights.

We next "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule" and assess "the extent to which those interests make it necessary to burden the plaintiff[s'] rights." *Id.* The defendants assert an important interest—indeed, a compelling one—in securing the people's right to self-government. The elector requirement operates to ensure that those who exercise this unique legislative power are members of the political community who will be bound by the proposed initiative should it become law—those with the qualifications to vote. The Supreme Court has repeatedly declared that states may restrict the performance of official acts such as voting or holding political office to members of the political community—that is, to electors. "We recognize a State's interest in establishing its own form of government, and in limiting participation in that government to those who are within the basic conception of a political community. We recognize, too, the State's broad power to define its political community." *Sugarman v. Dougall*, 413 U.S. 634, 642–43 (1973) (internal quotation marks and citation omitted). For example, bona fide residence requirements for voting "preserve the basic conception of a political community, and therefore could withstand [even] close constitutional scrutiny." *Dunn v. Blumstein*, 405 U.S. 330, 344 (1972).

The elector requirement in the instant case similarly ensures that only members of the relevant political community may hold an official position in the lawmaking process. It should not be controversial that California and the City of Chula Vista want civic-minded individuals with knowledge of local affairs to be the initiators of local

legislation. Conversely, the elector requirement prevents outsiders without ties to the community from officially proposing legislation that will govern that community. We agree with the district court that:

> Permitting a corporation or association to be a ballot initiative proponent could lead to local laws being proposed by foreigners unready to contribute to the city or bear the responsibility of citizenship. Worse, corporations with assets, operations, or shareholders located outside the city, state, or country might propose initiatives adversely affecting the welfare of citizens of Chula Vista, in order to gain a business advantage elsewhere. Likewise, associations of people who live and work in other locales, could propose laws to their own advantage or the disadvantage of Chula Vistans.

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 875 F. Supp. 2d 1128, 1136 (S.D. Cal. 2012). The elector requirement is an entirely appropriate mechanism for averting those dangers and for reserving to the people the right of self-government.[10]

---

[10] The plaintiffs correctly point out that the elector requirement is not as narrowly tailored to this interest as it might be. It applies to associations like CVC, some of whose members are electors. Additionally, it is somewhat redundant in that the requirement that a petition be signed by a specified number of voters similarly ensures that the relevant political community supports the initiative. The elector requirement need not, however, be narrowly tailored to the state's interest in light of the negligible burden it imposes on core political speech. *See ACLF*, 525 U.S. at 206 (Thomas, J., concurring in the judgment) ("To require that every

The history of the initiative system in California confirms that the elector requirement is central to a functioning system of direct democracy. California adopted the initiative system in 1911 at a special election called by Governor Hiram Johnson, a member of the Progressive Reform Movement, "in light of the theory that all power of government ultimately resides in the people." *Perry*, 265 P.3d at 1016; Karl Manheim & Edward P. Howard, *A Structural Theory of the Initiative Power in California*, 31 Loy. L.A. L. Rev. 1165, 1187 n.162 (1998). There was "a widespread belief that the people had lost control of the political process," *Perry*, 265 P.3d at 1016, as the Southern Pacific Railroad had come to dominate state politics at the turn of the century:

> Virtually every California legislator and judge owed his office to the Southern Pacific. . . . One member of the legislature observed that "[s]carcely a vote was cast in either house that did not show some aspect of Southern Pacific ownership, petty vengeance, or legislative blackmail." Indeed, "in the thirty years following adoption of the 1879 constitution, not a single bill opposed by the Southern Pacific Railroad was enacted in Sacramento." . . . [T]he examples of the railroad's dominance in every nook and cranny of the state [were] legion . . . .

---

voting, ballot, and campaign regulation be narrowly tailored to serve a compelling interest 'would tie the hands of States seeking to assure that elections are operated equitably and efficiently.'" (quoting *Burdick*, 504 U.S. at 433)).

Manheim & Howard, *supra*, at 1184 (footnotes and paragraph break omitted). *See also Strauss v. Horton*, 207 P.3d 48, 84 (Cal. 2009). The initiative system was designed as an antidote to this capture of the legislature by a powerful corporation—"one means of restoring the people's rightful control over their government." *Id*. By allowing an individual elector to assume the role of legislator, the initiative process "enable[s] the people to amend the state Constitution or . . . enact statutes when current government officials have declined to adopt (and often have publicly opposed) the measure in question." *Perry*, 265 P.3d at 1006; *see also* Samuel Issacharoff et al., *The Law of Democracy: Legal Structure of the Political Process* 937 (4th ed. 2012) ("Initiatives and referenda were touted ["at the turn of the twentieth century"] as a means of overcoming the capture of legislatures by special interests, such as the railroads, mining companies, and other industries, and of circumventing the power of ward-based political machines . . . ."). Thus, the initiative system is, at its core, a mechanism to ensure that the people, rather than corporations or special interests, maintain control of their government. The elector requirement clearly furthers this essential purpose of the initiative system.[11]

---

[11] That the initiative process may not have served its purposes as well as its original proponents hoped does not affect our decision here. There is mounting evidence that corporations and ultra-wealthy individuals have come to dominate the initiative process. *See* California Comm'n on Campaign Financing, *Democracy By Initiative: Shaping California's Fourth Branch of Government* 264–74 (1992); Adam Winkler, *Beyond Bellotti*, 32 Loy. L.A. L. Rev. 133, 137–39 (1998); Jamin B. Raskin, *Direct Democracy, Corporate Power and Judicial Review of Popularly-Enacted Campaign Finance Reform*, 1996 Ann. Surv. Am. L. 393, 395–99 (1996); John S. Shockley, *Direct Democracy, Campaign Finance, and the Courts: Can Corruption, Undue Influence, and Declining Voter Confidence Be Found?*, 39 U. Miami L. Rev. 377, 393–96 (1985); J. Skelly Wright, *Money and the Pollution of Politics: Is*

## C.

The plaintiffs nonetheless contend that the elector requirement triggers strict scrutiny and is impermissible under *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), for three reasons: (1) it is a direct ban on core political speech; (2) it bans disfavored speakers' speech; and (3) it requires speech by proxy. They are wrong.

As to the plaintiffs' first point: advocating for an initiative petition at the circulation stage is certainly core political speech, *see Meyer v. Grant*, 486 U.S. 414, 421–22 (1988); *see also McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995), but that is not what is at issue in this case. We repeat: a corporation or association is banned from serving only *as an official proponent*—a unique legislative position that may properly be reserved to members of the political community. Corporations and associations may still speak as much as they wish in support of or opposition to an initiative. Indeed, ABC and CVC were the sole financial backers of Proposition G. By contrast, in *Citizens United*, the independent expenditure ban at issue prohibited *all* electioneering communications by corporations during the time preceding an election. *See*

---

*the First Amendment an Obstacle to Political Equality?*, 82 Colum. L. Rev. 609, 622–25 (1982); *see also* Michael Hiltzik, *On California Initiatives, Money Talked, The Public Interest Walked*, L.A. Times, Nov. 5, 2014, http://tinyurl.com/latimeshiltzik; Norimitsu Onishi, *California Ballot Initiatives, Born in Populism, Now Come from Billionaires*, N.Y. Times, Oct. 17, 2012, at A22; Ina Jaffe, *Corporate Bucks Behind 'Citizens' Initiatives in Calif.*, Nat'l Public Radio, May 24, 2010, http://tinyurl.com/nprjaffe. However, the State of California and the City of Chula Vista are entitled to continue striving to guarantee self-government to their citizens, notwithstanding these shortcomings of direct democracy, and to improve the initiative process should they so desire.

558 U.S. at 337. In short, neither California nor the City of Chula Vista prohibits corporations or associations from acting as supporters or advocates for an initiative at any time, and thus core political speech is burdened by the elector requirement only incidentally, if it is burdened at all. *Citizens United* plainly does not establish that every time an election law incidentally affects a corporation—no matter how indirectly and minimally—strict scrutiny is triggered and the law invalidated.

Moreover, the plaintiffs fail to adduce any evidence that the elector requirement in any way burdens the ability to qualify measures for the ballot, reducing the total quantum of political speech and triggering heightened scrutiny. *See Angle v. Miller*, 673 F.3d 1122, 1132 (9th Cir. 2012) (explaining that strict scrutiny applies only where a regulation of the initiative process *severely* burdens speech by limiting the number of voices that will convey the proponent's message, making it less likely that the matter will be placed on the ballot and become the focus of public discussion); *Prete v. Bradbury*, 438 F.3d 949, 961–63 (9th Cir. 2006) (same). Indeed, the corporate and associational plaintiffs in this case successfully located individual electors to serve as official proponents for their initiative and, as explained *infra* in Section III.A, California has one of the most active local initiative systems in the country. Thus, plaintiffs have not offered any evidence that would support their argument that the elector requirement is a direct ban on core political speech. *See Angle*, 673 F.3d at 1133–34 (holding that strict scrutiny did not apply because the plaintiffs had failed to meet their burden of demonstrating that the challenged regulation of the initiative process "significantly inhibit[s] the ability of initiative proponents to place initiatives on the ballot").

As to the plaintiffs' second contention, the elector requirement does not violate the "principle . . . that the Government may not suppress political speech on the basis of the speaker's corporate identity." *Citizens United*, 558 U.S. at 365. That corporations have First Amendment rights does not establish that those rights are coextensive with the rights of electors. *See, e.g.*, *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1124–25 (9th Cir. 2011). Indeed, *Citizens United* itself noted that "there are certain governmental functions that cannot operate without some restrictions on particular kinds of speech," although those restrictions may operate to the disadvantage of certain speakers. 558 U.S. at 341. In a similar vein, *First National Bank of Boston v. Bellotti* explained that certain constitutional rights, "such as the privilege against compulsory self-incrimination, are unavailable to corporations and other organizations because the 'historic function' of the particular guarantee has been limited to the protection of individuals." 435 U.S. 765, 778 n.14 (1978) (quoting *United States v. White*, 322 U.S. 694, 698–701 (1944)). Certainly no one would argue that *Citizens United* and *Bellotti* extend so far as to grant to corporations the right to vote or to hold public office (or even to sit on the bench). The plaintiffs concede as much. We accordingly refuse to extend *Citizens United* to grant to corporations and associations the right to hold a distinct, official role in the process of legislating, by initiative or otherwise.

As to the plaintiffs' final attempt to expand *Citizens United*, there is no problem here of requiring speech by proxy. Corporations and associations simply cannot perform official legislative functions directly *or* by proxy. The avenues of expression guaranteed to corporations and associations meanwhile are left fully open to them and are in no way burdened. *Cf. Citizens United*, 558 U.S. at 337. The

mere fact that the corporate and associational plaintiffs must rely on their members or other electors to serve as official proponents does not violate the First Amendment or trigger heightened scrutiny. Under the plaintiffs' view of *Citizens United*, the government could not exclude corporations or associations from *any* position available to human beings because to do so would impermissibly require speech by proxy—an assertion that is clearly untenable.

Finally, we address briefly the plaintiffs' claims pertaining to freedom of association. The plaintiffs make two arguments, both of which are foreclosed by our holding that the elector requirement is otherwise valid under the First Amendment. First, the plaintiffs contend that, "[e]ven if the right to be an initiative proponent belonged solely to 'electors,' forbidding *electors* to *associate* to enhance their advocacy directly and severely burdens the right to associate." Appellants' Br. 19–20. Nothing in the California or municipal law, however, prevents the members of CVC and ABC from banding together to advocate for or against an initiative as an association; they simply lack the right to collectively serve as an official proponent. Second, the plaintiffs contend that the elector requirement creates an unconstitutional condition by forcing them to choose between their First Amendment rights to engage in political speech as official proponents and to privacy of association. Because we find no First Amendment right of corporations or associations to serve as official proponents, this argument is without merit. Thus, the plaintiffs' associational claims also fail, as do all of their attempts to push *Citizens United* beyond what the Court held in that case.

\* \* \*

"In assessing the countervailing interests at stake in this case, we must be mindful of the character of initiatives and referenda. These mechanisms of direct democracy are not compelled by the Federal Constitution. It is instead up to the people of each State, acting in their sovereign capacity, to decide whether and how to permit legislation by popular action." *Reed*, 561 U.S. at 212 (Sotomayor, J., concurring). The elector requirement at issue in this case merely limits to those qualified to vote the ability to serve as an official proponent, a legislative role with unique powers and responsibilities under state law. We hold that the First Amendment does not prohibit the State of California and the City of Chula Vista from reserving this legislative power to electors in order to preserve the self-government of their citizens.

## III.

Next, the plaintiffs challenge the requirement that an official proponent's name appear on the face of the initiative petitions circulated to voters. To recapitulate, California's statutory regime, as adopted by the Chula Vista City Charter, requires an official proponent to disclose his identity on three occasions: (1) the filing of a notice of intent to circulate an initiative petition with the city clerk, which must be signed by at least one and not more than three, proponents, Cal. Elec. Code § 9202(a); (2) the publication of the signed notice of intent in a newspaper of general circulation, *id.* § 9205; and (3) the inclusion of the signed notice of intent on each section of the circulated initiative petition, *id.* §§ 9202(a), 9207. The plaintiffs in this case challenge only the last of these requirements—the petition disclosure requirement. Applying exacting scrutiny, we conclude that this disclosure does not violate the First Amendment.

## A.

As an initial matter, we reject the plaintiffs' contention that strict scrutiny applies. "[D]isclosure requirements may burden the ability to speak, but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking." *Citizens United*, 558 U.S. at 366 (internal quotation marks and citation omitted). For this reason, the Supreme Court has consistently "subjected these requirements to 'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." *Id.* at 366–67 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64, 66 (1976) (per curiam)); *see also Reed*, 561 U.S. at 196–97; *Family PAC v. McKenna*, 685 F.3d 800, 803 (9th Cir. 2012). The public nature of an official proponent's position and the legislative character of an initiative petition inform this analysis. In other words, that exacting scrutiny applies "is not to say that the electoral context is irrelevant to the nature of our First Amendment review. We allow States significant flexibility in implementing their own voting systems," including the initiative process. *Reed*, 561 U.S. at 195, 197.

As we stated earlier, *supra* p. 23, strict scrutiny applies only where the challenged law *severely* burdens the ability to place an initiative on the ballot. *See Angle*, 673 F.3d at 1132; *Prete*, 438 F.3d at 961–63. Contrary to the plaintiffs' contention that strict scrutiny applies here, disclosure of the identities of the official proponents of an initiative measure places only a minimal burden on First Amendment rights, if it imposes any burden at all. The petition disclosure requirement simply provides for identification of the initiative's official proponents on the face of the initiative petitions. An official proponent is prohibited from speaking

anonymously only *within the four corners of the initiative petition*—an official election document. *See S.F. Forty-Niners v. Nishioka*, 89 Cal. Rptr. 2d 388, 396 (Ct. App. 1999) ("The initiative petition with its notice of intention is not a handbill or campaign flyer—it is an official election document . . . . It is the constitutionally and legislatively sanctioned method by which an election is obtained on a given initiative proposal."). Nothing limits the quantity of speech that a proponent or anyone else may otherwise engage in to promote the initiative, and an initiative's official proponent may still engage in anonymous speech about the proposed ballot measure or any other topic.

In asserting that strict scrutiny applies, the plaintiffs rely upon cases that prohibit the disclosure of the identity of petition *circulators*—a role distinct from that of an initiative proponent or a petition signatory. Those cases found that the overall quantity of speech would be reduced by identifying petition circulators who engage in person-to-person voter persuasion because it would expose circulators "to the risk of 'heat of the moment' harassment," chilling speech. *ACLF*, 525 U.S. at 199–200, 204 (invalidating requirements that circulators wear name badges and that names and addresses of paid circulators be disclosed in monthly reports because they "discourage[ ] participation in the petition circulation process by forcing name identification without sufficient cause"); *see also Meyer*, 486 U.S. at 423 (invalidating ban on paid circulators because it "has the inevitable effect of reducing the total quantum of speech on a public issue"); *(WIN) Wash. Initiatives Now v. Rippie*, 213 F.3d 1132, 1137 (9th Cir. 2000) (invalidating disclosure of names and addresses of paid circulators because "[t]here can be no doubt that the compelled disclosure of this information chills

political speech"). The disclosure requirement in the instant case, however, has no such chilling effect.

There is no indication that the petition disclosure requirement operates to reduce the total quantum of speech pertaining to ballot initiatives. More than sixty municipal initiatives qualified for the ballot during calendar years 2009–2010, the time period during which the plaintiffs sought to qualify Proposition G for the ballot. In fact, California is known for having one of the most robust initiative systems in the country. *See* L. Tobe Liebert, *Researching California Ballot Measures*, 90 Law Libr. J. 27, 28 (1998) ("Since [1911], the people of California have used the ballot measure process more than any other state to create the laws by which they are governed."). It bears noting that the plaintiffs in this case were not deterred from sponsoring Proposition G by the petition disclosure requirement; rather, they simply would have preferred to list CVC and ABC's names. Indeed, they have no objection to the two other required public disclosures of their names.

Further distinguishing the cases on which the plaintiffs rely, an official proponent plays a far different role from that of a circulator and does not engage in direct voter contact as part of his official duties as a proponent. Should he choose to do so, there is no requirement that he reveal to the voter that he is in fact the official proponent named on the petitions; the proponent may choose to remain anonymous at the point of voter contact just like any ordinary circulator.[12] Thus, the petition disclosure requirement in no way "restrict[s] one-on-

---

[12] Of course, if the voter recognizes the proponent who is also acting as a circulator, then the proponent has no claim that the petition disclosure has deprived him of anonymity. He is already known.

one communication between petition circulators and voters." *Angle*, 673 F.3d at 1132.

In upholding disclosure requirements for lobbyists, the Supreme Court explained that "[h]ypothetical borderline situations are conjured up in which . . . persons choose to remain silent . . . . The hazard of such restraint is too remote to require striking down a statute which on its face is otherwise plainly within the area of [legislative] power and is designed to safeguard a vital [governmental] interest." *United States v. Harriss*, 347 U.S. 612, 626 (1954). So too, here the hypothetical possibility that someone somewhere might be deterred from proposing an initiative by the requirement that the circulated petitions include his name—but not by the requirements that his name be available to the public on file in the city clerk's office or that he publish his name in a newspaper of general circulation—is too remote to warrant the application of strict scrutiny. *See Angle*, 673 F.3d at 1134 (holding that the plaintiffs' "assertions are too vague, conclusory and speculative to create a triable issue that" the challenged initiative regulation severely burdens protected speech); *Family PAC*, 685 F.3d at 807 ("[A]lthough Family PAC cites a survey conducted in six states (not including Washington) purporting to show that people may 'think twice' about contributing to ballot measure committees if their names and addresses are to be publicly disclosed, Family PAC has not presented evidence suggesting that Washington's disclosure laws actually and meaningfully deter contributors."). Given the absence of evidence that the petition disclosure requirement has an effect on the total quantum of speech pertaining to ballot measures and the Supreme Court's repeated application of exacting scrutiny to disclosure requirements, we conclude that strict scrutiny is inapplicable here.

## B.

"'To withstand [exacting] scrutiny, 'the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights.'" *Reed*, 561 U.S. at 196 (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 744 (2008)). As explained *supra*, the actual burden imposed on First Amendment rights by the petition disclosure requirement is quite small. Meanwhile, two important governmental interests justify the requirement: (1) an interest in the integrity of the electoral process, and (2) an informational interest. Although we conclude that the former interest is sufficient in and of itself to justify the petition disclosure requirement, we also address the latter interest because it is inextricably linked to the former.

"The State's interest in preserving the integrity of the electoral process is undoubtedly important." *Reed*, 561 U.S. at 197; *see also Timmons*, 520 U.S. at 364 ("States certainly have an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes as means for electing public officials."). This "interest in preserving electoral integrity is not limited to combating fraud. . . . [It] extends more generally to promoting transparency and accountability in the electoral process . . . ." *Reed*, 561 U.S. at 198. The requirement that an official proponent's name appear on the face of the petition circulated to voters serves the government's interest in electoral integrity in three ways: First, because the official proponents are charged with forthrightly and faithfully implementing the initiative process, voters signing the petitions are entitled to know their identities. Second, requiring an official proponent to publicly associate his name with the measure he proposes helps ensure that only initiatives with at least a modicum of local support

are presented to the voters. Third, requiring identification of the official proponent serves to deter misleading or spoiler initiatives.

At the petition circulation stage, an official proponent resembles a candidate for public office, and the petition is effectively the ballot used by voters to imbue him with special legislative authority. As explained *supra* in Section II.B, under California and Chula Vista law, an official proponent plays a "distinct role" in the initiative process, "involving both authority and responsibilities that differ from other supporters of the [proposed ballot] measure." *Perry*, 265 P.3d at 1017–18. There are a number of ways in which an ineffective or dishonest proponent could scuttle an initiative's chances of becoming (or remaining) law: (1) a proponent could fail to oversee the collection of the requisite number of signatures; (2) he could decline to authorize the filing of the signed petitions; (3) he could knowingly make weak arguments in the ballot pamphlet distributed to voters by the elections official; and (4) he could fail to defend the initiative in court proceedings. Accordingly, when deciding whether to sign a petition, the identity of the official proponent matters, and voters need to know whom they are being asked to vest with that authority. Certainly no one would argue that candidates for elective office have a right to be anonymous on the ballot. *See, e.g.*, *Buckley*, 424 U.S. at 14–15 ("In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential . . . ."); *Griset v. Fair Political Practices Comm'n*, 884 P.2d 116, 125 (Cal. 1994) ("Griset does not claim, nor could he, that a candidate for public office has a

legitimate interest in expressing the candidate's views anonymously.").[13] That principle is equally applicable here.

The petition disclosure requirement also furthers the governmental interest in electoral integrity by ensuring that initiatives have a modicum of genuine support in the relevant political community. Just as the state has an interest in "properly reserv[ing] the general election ballot for major struggles, by conditioning access to that ballot on a showing of a modicum of voter support," *Munro v. Socialist Workers Party*, 479 U.S. 189, 196 (1986) (internal quotation marks and citation omitted), so too the State of California and the City of Chula Vista may require that at least one local person be willing to associate his name with a proposed initiative before the initiative process is set in motion. True, the petition signature requirement also ensures that initiatives have local support, but as explained *infra*, exacting scrutiny does not require the state to employ solely the single best means of furthering its interests. Moreover, the petition signature requirement screens for initiatives with local support at a later stage in the process, whereas the petition disclosure requirement ensures a modicum of local support *before* the city expends resources in the preparation of a ballot title and summary or in verifying the validity of

---

[13] Additionally, because an official proponent resembles a candidate for public office and voters need to be able to evaluate the proponent's suitability for the job, we reject the plaintiffs' contention that the Supreme Court's admonition in *McIntyre v. Ohio Elections Commission* that "[a]nonymity . . . provides a way for a writer who may be personally unpopular to ensure that readers will not prejudge her message" is applicable here. 514 U.S. at 342; s*ee also ACLF*, 525 U.S. at 203 ("Disclosure of the names of initiative sponsors . . . responds to [a] substantial state interest.").

signatures and ensures that voters are not asked to sign frivolous petitions.

Finally, the requirement that at least one person be willing to associate his name with the proposed initiative helps deter spoiler legislation. Without such a requirement, there is virtually no check on misleading or spoiler initiatives (perhaps even measures known to the proponent to be unconstitutional) that may stem from an ulterior motive, such as a desire to subvert a legitimate initiative by confusing the voters or cluttering the field and drawing away voter support from an initiative that the official proponent is seeking to defeat. *See* Issacharoff et al., *supra*, at 948 (noting that in one election year the California ballot contained five different initiatives on the same subject); *see also* Jaime Fuller, *Why Are Ballot Measures So Darn Confusing? Because They are Supposed to Be*, Wash. Post, Aug. 5, 2014.[14]

The governmental interest in ensuring the integrity of the initiative process necessarily implicates the voter's right to information. Voters are entitled to know who is asking them for distinct powers and duties in the initiative process. The plaintiffs' argument that the government has an interest in ensuring that voters have enough information to make an informed choice with respect to *candidate elections*—but not with respect to *ballot measures*—is without merit. This court has upheld disclosures in the initiative context both before and after *Citizens United*, relying solely on the state's informational interest to sustain disclosures of an initiative's financial backers:

---

[14] Available at http://tinyurl.com/wapofuller.

> "Knowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot-measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown. At least by knowing who backs or opposes a given initiative, voters will have a pretty good idea of who stands to benefit from the legislation."

*Family PAC*, 685 F.3d at 808 (citation omitted) (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1106 (9th Cir. 2003)). That is, "[v]oters act as legislators in the ballot-measure context . . . . We think Californians, as lawmakers, have an interest in knowing who is lobbying for their vote, just as members of Congress may require lobbyists to disclose who is paying for the lobbyists' services and how much." *Getman*, 328 F.3d at 1106 (citing *Harriss*, 347 U.S. at 625); s*ee also Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1007 (9th Cir. 2010). The interest in disclosure is even stronger with respect to an official proponent than with respect to the financial backers of an initiative, as the former is not just proposing legislation, like a lobbyist, but also asking the electors for special responsibilities, like a candidate for public office.[15] The ability to decide whether to

---

[15] This interest is also much stronger than the informational interest in knowing the identity of ordinary pamphleteers which the courts rejected in *McIntyre*, 514 U.S. 334, and *ACLU v. Heller*, 378 F.3d 979 (9th Cir. 2004). Those cases concerned extremely broad statutes requiring *any* person publishing material relating to an election or ballot measure to include his name on the face of the publication. *See McIntyre*, 514 U.S. at 338 n.3; *Heller*, 378 F.3d at 981–82. The instant case commands a different balance between the interests of the speaker and the state: it involves disclosure of an official proponent who seeks to perform official

afford an official proponent that authority is especially important when electors face multiple initiatives with differing official proponents on the same topic.[16] Thus, the government's interests in electoral integrity and in providing voters with information are inextricably linked in that knowledge of the identity of an initiative's official proponent helps ensure that the measure will be faithfully processed, has support in the political community, and is a bona fide measure not designed to be misleading or to serve as a spoiler. Together, and separately, they constitute a "sufficiently important governmental interest" to which the petition disclosure requirement bears a "substantial relation." *Reed*, 561 U.S. at 196.

## C.

The plaintiffs' argument for invalidating the petition disclosure requirement relies heavily on the assertion that, in light of the two earlier disclosures of the proponent's name, it is not "substantially related" to the government's interests in the integrity of the electoral process and in providing voters with information necessary to make an informed

---

functions, not a mere advocate, and it involves disclosure on the face of an initiative petition, an official election document, not on the face of a non-governmental publication.

[16] *See, e.g.*, Karen Weise, *A California Tax Plan Meets the Mungers*, Bloomberg Business, Oct. 25, 2012, http://tinyurl.com/bloombergprop38 (describing competing initiatives that would increase tax revenue for schools); *see also* Brooks Barnes, *Californians Face Rival Ballot Initiatives That Would Raise Taxes and Aid Schools*, N.Y. Times, Sept. 11, 2012, at A12; Chris Megerian, *Democrats Out to Defeat Rival Tax Initiative Prop. 38*, L.A. Times, Oct. 6, 2012, http://tinyurl.com/latimesprop38.

choice. *See id*. They contend that the other uncontested disclosure requirements—the signed notice of intent available upon request from the city clerk and the publication of the signed notice of intent in a newspaper of general circulation—are sufficient to fulfill the government's interests in disclosure of the official proponent's identity. *See* In their view, the petition disclosure requirement impermissibly "compels personal name identification at the precise moment when the [speaker's] interest in anonymity is greatest." *ACLF*, 525 U.S. at 199. That is, the petition disclosure requirement "operates when reaction to the . . . message is immediate and may be the most intense, emotional, and unreasoned . . . , expos[ing] the [speaker] to the risk of 'heat of the moment' harassment." *Id.* (internal quotation marks and citation omitted).

True, "it is not just *that* a speaker's identity is revealed, but how and when that identity is revealed, that matters in a First Amendment analysis of a state's regulation of political speech." *ACLU v. Heller*, 378 F.3d 979, 991 (9th Cir. 2004). Here, however, this principle supports disclosure of the identity of the official proponent on the face of the official initiative petitions. The "how and when" of this disclosure is indeed substantially related to the government's important interests in electoral integrity and in providing the voters with official information regarding the initiative. Moreover, the individual whose name is disclosed is not exposed to a risk of "heat of the moment" harassment.

First, it is obvious that the public's interest in disclosure of the official proponent's identity is greatest at the moment electors are confronted with a petition to sign. "People have jobs, families, and other distractions," making it unlikely that they will undertake independent efforts to determine the

identity of the measure's official proponent. *Getman*, 328 F.3d at 1106. It is unreasonable to expect a voter who is asked to sign a petition on the spot to first go to the clerk's office or to comb through old newspapers to locate the name of the initiative's official proponent. The plaintiffs' "analysis ignores the reality that citizens typically are asked to review and sign initiative petitions on the spot, at a street corner or shopping mall, where there is generally no opportunity for further study. That is the moment when information about the petition, including the identities of the people proposing it, is most valuable . . . ." Amicus Brief of League of California Cities 2.

Second, we repeat: the petition disclosure requirement does not actually require an official proponent to identify himself in person at the point of contact with voters—the supposedly high-risk moment. The official proponent is identified on the petition, which *circulators* proffer to voters. If the official proponent chooses to also act as a circulator and thus engages in direct voter contact, there is no requirement that he tell voters who he is—a voter would normally simply believe that he was an ordinary, anonymous circulator. Otherwise, an official proponent does not confront the voter at all, let alone at the moment that might, at least in theory, expose him to harassment.

Third, exacting scrutiny is not a least-restrictive-means test. *See Brumsickle*, 624 F.3d at 1013 ("[T]he Supreme Court has made clear that exacting scrutiny, not strict scrutiny, is applicable to . . . disclosure requirements. . . . The government need not . . . employ the least restrictive means to satisfy its interest in providing the electorate with information . . . ." (citation omitted)). In applying exacting scrutiny, the Supreme Court has rejected the argument that

the possibility of disclosure at another time undermines the need for disclosure at the moment when disclosure is most useful. *Buckley*, 424 U.S. at 68 n.82 ("Post-election disclosure by successful candidates is suggested as a less restrictive way of preventing corrupt pressures on officeholders. Delayed disclosure of this sort would not serve the equally important informational function played by pre-election reporting."). The plaintiffs rely on cases holding that the proffered governmental interests in disclosing a *circulator's* identity did not warrant the burden of disclosure at the point of contact with voters, but those cases expressly noted that the government has a much stronger interest in disclosing the name of an official proponent than a circulator, stating that disclosures of the former are valid. *See ACLF*, 525 U.S. at 203 ("Through the disclosure requirements that remain in place, . . . voters will be told 'who has proposed [a measure],' and 'who has provided funds for its circulation.'"); *WIN*, 213 F.3d at 1139 & n.6 (same).

Finally, a comparison with the Supreme Court's recent decision in *Reed* confirms our conclusion that the petition disclosure requirement passes constitutional muster. In that case, the Court held that the disclosure of 137,000 petition signatories did not violate the First Amendment. 561 U.S. at 192, 202. In the instant case, we affirm the disclosure of the names of at most three people who chose to become the official proponents of a ballot measure and whose names would already have been disclosed to the public on two occasions shortly prior to the challenged disclosure. Any contrary ruling would be in serious tension with *Reed*, rendering it facially constitutional to disclose the names of petition signatories yet facially unconstitutional to disclose the names of the same petition's official proponents.

**D.**

We also reject the plaintiffs' as-applied challenge to the petition disclosure requirement. A disclosure "would be unconstitutional as applied to an organization if there were a reasonable probability that the group's members would face threats, harassment, or reprisals if their names were disclosed." *Citizens United*, 558 U.S. at 370; *see also Reed*, 561 U.S. at 201. The plaintiffs fail to establish any such probability of a "bona fide threat of harassment or retaliation." *Family PAC*, 685 F.3d at 807. Aside from conclusory statements that they feared that they *might* be subject to harassment for proposing Proposition G, the only "harassment" alleged was negative campaign literature identifying one proponent, Breitfelder—who was simultaneously campaigning for city councilman—as "an anti-worker activist and . . . the spokesperson for the discriminatory Yes on G [initiative] campaign." Obviously this was itself protected political speech and does not amount to harassment simply because Breitfelder disliked it.

It also bears noting, although we do not base our decision on it in any respect, that the interest of the proponents in anonymity is especially weak given the facts of the instant case. Both Kneebone and Breitfelder engaged in public activities advocating passage of Proposition G beyond the activities required of them as its official proponents, speaking at televised public meetings and having their names used in campaign materials provided to voters. Moreover, they explained in depositions that they did not really desire anonymity, but rather "wanted voters to know that the 'correct' sponsor of the ballot initiative was the Association of Builders and Contractors, Inc. and the Chula Vista Citizens for Jobs and Fair Competition."

Further underscoring that this case is not really about anonymity, the plaintiffs do not challenge the requirement that their identities be disclosed in the notice of intent to circulate an initiative petition filed with the city clerk; nor do they challenge the requirement that they publish this notice of intent identifying them in a newspaper of general circulation. Rather, they wish to remain anonymous only at a particular moment in time—indeed, at the moment when knowledge of their identity is most useful to voters. The plaintiffs have failed to make out a valid as-applied claim.

\* \* \*

The challenged disclosure poses at the most a minimal burden on First Amendment rights. It simply requires that potential signatories be allowed to determine the name of an official proponent when they are deciding whether to grant him an official role in the legislative process. As such, a proponent is akin to a candidate for public office and, accordingly has no right to anonymity on the face of the initiative petition. Disclosure of his identity on the petition is substantially related to the government's important interests in the integrity of the electoral process and in providing voters with official information regarding the initiative.

## IV.

We hold that the requirement that the official proponent of an initiative be an elector, thereby excluding corporations and associations from holding that position, does not violate the plaintiffs' First Amendment rights to freedom of speech and association. We also hold that the requirement that the name of the official proponent of an initiative be disclosed on

the face of the initiative petitions withstands exacting scrutiny under the First Amendment.

**AFFIRMED.**